In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00004-CV
______________________________


MICHELLE HOWARD, Appellant
 
V.
 
EAST TEXAS BAPTIST UNIVERSITY, Appellee


                                              

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 02-0700


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            While visiting an outdoor swimming pool, which was owned by East Texas Baptist
University (ETBU) and made publicly available for a nominal fee, Michelle Howard allegedly
injured her back when the pool's diving board "double bounced." She contends the diving board's
fulcrum was improperly positioned, so one side of the board was unsupported and she was
"propelled upward in an unstable manner and in an unexpected direction." Howard alleges that her
automatic attempt to correct herself in midair resulted in injuries to her back. 
            Based on this occurrence, Howard initially sued ETBU June 1, 2001. As in the present
lawsuit, ETBU filed a motion for summary judgment, which was set for submission May 31, 2002. 
Howard filed a motion for nonsuit May 23, 2002. On July 5, 2002, Howard refiled her suit against
ETBU alleging causes of action for premises liability, negligence, and gross negligence. ETBU
answered August 6, 2002, and filed its motion for summary judgment two days later. On September
5, 2002, the day before the setting for submission on the motion for summary judgment, Howard
filed an opposed motion for continuance that was subsequently denied. On November 25, 2002, the
trial court granted ETBU's motion for summary judgment. Howard now appeals, contending 
summary judgment was improper and the trial court erred in denying her motion for continuance. 
We affirm.
 
 
Summary Judgment
            A summary judgment movant has the burden of showing that there is no genuine issue of
material fact and that judgment for movant is proper as a matter of law. Nixon v. Mr. Prop. Mgmt.
Co., 690 S.W.2d 546, 548–49 (Tex. 1985). In deciding whether there is a disputed material fact
issue precluding summary judgment, we consider true any evidence favorable to the nonmovant and
will resolve any doubts and indulge every reasonable inference in nonmovant's favor. Id. Because
the trial court's order granting summary judgment does not specify the basis for the order, we will
uphold the trial court's decision if it is correct under any theory advanced in ETBU's motion for
summary judgment. Rogers v. Ricane Enters., Inc., 772 S.W.2d 76, 79 (Tex. 1989).
            As mentioned above, Howard sued ETBU for premises liability, negligence, and gross
negligence. Reviewing the grant of summary judgment on those causes of action requires that we
determine the applicable standard of care. Therefore, the Texas recreational use statute is pivotal. 
See Tex. Civ. Prac. & Rem. Code Ann. §§ 75.001–.004 (Vernon Supp. 2003).
            Tex. Civ. Prac. & Rem. Code Ann. § 75.002(c) provides:
If an owner . . . of real property other than agricultural land gives permission to
another to enter the premises for recreation, the owner . . . , by giving the permission,
does not: (1) assure that the premises are safe for that purpose; (2) owe to the person
to whom permission is granted a greater degree of care than is owed to a trespasser
on the premises; or (3) assume responsibility or incur liability for any injury to any
individual or property caused by any act of the person to whom permission is granted.

If applicable in this case, the recreational use statute would apply the standard of care owed by a
landowner to a trespasser; that is, ETBU would be liable only for injuries incurred through its willful,
wanton, or grossly negligent conduct. Tex. Utils. Elec. Co. v. Timmons, 947 S.W.2d 191, 193 (Tex.
1997).Howard contends the recreational use statute does not apply because ETBU improperly
calculates the amount of ad valorem taxes paid on the "premises." Properly identifying the premises
for which ad valorem taxes should be considered is critical because it directly affects the
applicability of the statute. The statute, by its terms, applies to ETBU only if it is an owner who
charges for entry to the premises, but whose total charges collected in the previous
calendar year for all recreational use of the entire premises of the owner . . . are not
more than . . . twice the total amount of ad valorem taxes imposed on the premises
for the previous calendar year.

Tex. Civ. Prac. & Rem. Code Ann. § 75.003(c)(2)


 (emphasis added). While ETBU interprets the
statute to include the $10,782.72 in ad valorem taxes imposed on ETBU's entire premises, Howard's
interpretation would include no taxes, since ETBU pays no tax on the swimming pool premises. If
ETBU is correct in comparing the $5,132.74


 collected for the recreational use of its entire premises
to the $10,782.72 in ad valorem taxes imposed on all of its property, the recreational use statute
clearly applies and summary judgment was appropriately granted.


 If Howard's assertion is correct,
however, and the $5,132.74 collected for the recreational use of ETBU's entire premises is properly
compared to the lack of any ad valorem taxes imposed on the swimming facility premises, the
recreational use statute does not apply, and the case should be remanded for further proceedings.
Statutory interpretation is a matter of law, In re Canales, 52 S.W.3d 698, 701 (Tex. 2001),
the primary rule of which is "to read the enactment as a whole and to construe the statute so as to
give effect to legislative intent." Tex. Bldg. Owners & Managers Ass'n, Inc. v. Pub. Util. Comm'n,
110 S.W.3d 524, 531 (Tex. App.—Austin 2003, no pet.) (citing State v. Pub. Util. Comm'n, 883
S.W.2d 190, 196 (Tex. 1994)). Whether the recreational use statute applies is governed by three
tests set out in Section 75.003(c). See Tex. Civ. Prac. & Rem. Code Ann. § 75.003(c). Since
ETBU charged for entry (negating test one) and did not have liability insurance coverage in effect
on an act or omission described by Section 75.004(a) (negating test three), we concern ourselves only
with test two, the financial-ratio test, asking whether, in the calendar year before the occurrence in
question, the amount charged by ETBU for recreational uses of its "entire premises" exceed twice
the ad valorem taxes imposed on "the premises." See Tex. Civ. Prac. & Rem. Code Ann. §
75.003(c)(2).
On careful review of the language of that test, we conclude that, by using the terms "entire
premises" and "the premises" within the same test, the Legislature intended the meaning of the latter
to be the same as the former. In other words, the use of the words "the premises" merely refers back
to and takes on the meaning of the more specific term, "entire premises."
Our interpretation comports with other courts' assessments of the Legislature's general intent
in enacting the recreational use statute. After analyzing the legislative history of the recreational use
statute, the First Court of Appeals determined that "the legislature enacted the statute to encourage
a possessor of land to allow persons whom he would not otherwise invite as social guests to enter
his land for recreational purposes" in exchange for "a lower standard of care." Lipton v. Wilhite, 902
S.W.2d 598, 600 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Building on the Lipton
analysis, the Third Court of Appeals explained that the Legislature apparently intended the statute
to operate "as a limited exception to the traditional common-law duties owed by landowners for the
specific purpose of creating recreational facilities for the general public" and "considered the
imposition of a lower standard of care for persons receiving the benefit of recreational access an
appropriate measure for allocating costs under the statute." McMillan v. Parker, 910 S.W.2d 616,
618 (Tex. App.—Austin 1995, writ denied).
Although not dealing specifically with the same issue, the Third Court of Appeals further
stated the purpose of Section 75.003(c)
was to expressly prevent landowners who specialize in commercial recreation from
wrongfully taking advantage of the statute . . . . The limited application of the statute
to owners who charge a nominal entrance fee (presumably to defray costs of
maintaining the property) rather than engaging in commercial recreation for profit is
consistent with the overall purpose of the statute: to create and preserve land that the
general public may use for recreational purposes.

Id. at 619. In light of this interpretation, Howard's position that the calculation of ad valorem taxes
imposed on ETBU should be limited to the property on which the swimming facility is located is
contrary to the Legislature's intent to make available to the public for recreational purposes land that
would otherwise be inaccessible. If this were the case, property owners like ETBU would have no
incentive to open private property to the public, knowing they would be subject to a higher standard
of care.
            We hold, therefore, that the meaning of "the premises" in Section 75.003(c)(2)(A), for the
purpose of calculating the ad valorem taxes imposed in determining the applicability of the
recreational use statute, encompasses the property opened to the public for recreational use and any
other real property owned by the party seeking limited liability under the statute; that is, the owner's
entire premises.
Since the recreational use statute applies, it limits the standard of care ETBU owes to
Howard. As long as ETBU did not act willfully, wantonly, or in a grossly negligent manner, it will
not be held liable for Howard's alleged injuries. Timmons, 947 S.W.2d at 193.
Howard contends her expert's report and affidavit establish elements of gross negligence. 
The summary judgment evidence, however, establishes as a matter of law that ETBU was not grossly
negligent. Gross negligence includes two elements:
(1) viewed objectively from the standpoint of the actor, the act or omission must
involve an extreme degree of risk, considering the probability and magnitude of the
potential harm to others, and (2) the actor must have actual, subjective awareness of
the risk involved, but nevertheless proceed in conscious indifference to the rights,
safety, or welfare of others.

Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 23 (Tex. 1994). Howard's expert, without personally
inspecting the diving board, based his report and affidavit on the original petition, photographs of
the diving board, and, in large part, on the affidavits of two ETBU employees. He simply opined
that "[t]he condition of the board at the time of the accident resulted from an inexcusable lack of
normal maintenance and an equally inexcusable lack of concern for safety" and that "[t]he board was
not kept safe in a manner consistent with the American National Standard . . . for public swimming
pools." Little more was offered in the preliminary report attached to the expert's affidavit: He
indicated that the major factors suggesting ETBU's culpability included the lack of (1) maintenance
of the diving board's surface and (2) level mounting of the board and the fulcrum, citing the
testimony of the two ETBU employees that they were aware the fulcrum shifted periodically, yet
never reported a need for repair. 
In examining the statements of these two employees, however, it is clear no genuine issue
of material fact was raised as to any gross negligence by ETBU. On the contrary, although the
employees indicated they had been aware for some time that the diving board's fulcrum would shift
occasionally after extensive use, the shifting never caused problems suggesting any risk to divers
and, whenever a periodic inspection of the board revealed any such shifting, the fulcrum would
simply be repositioned. One of the employees, a lifeguard at the pool for ten years, stated in an
affidavit that she has "never received any complaint, or even any suggestion, that the diving board
was functioning improperly," nor has she ever "observed any defects or problems with the diving
board, either before or after" the date Howard allegedly injured herself. The evidence simply does
not suggest that, considering the probability and magnitude of the potential harm to others, there was
an extreme degree of risk involving the diving board's use or that ETBU was aware of, or acted with
conscious indifference to, any risk involving the rights, safety, or welfare of its patrons.


 The
summary judgment was properly granted.
Motion for Continuance
A ruling on a motion for continuance is within the trial court's sound discretion, which will
be reviewed only for clear abuse of that discretion. Villegas v. Carter, 711 S.W.2d 624, 626 (Tex.
1986). The test applied by reviewing courts is "whether the court acted without reference to any
guiding rules and principles" or, stated differently, whether the court acted arbitrarily or
unreasonably. Hodson v. Keiser, 81 S.W.3d 363, 368 (Tex. App.—El Paso 2002, no pet.) (citing
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985)). In making such a
determination, reviewing courts must "view[] the evidence in the light most favorable to the trial
court and indulge[] every legal presumption in favor of the judgment." Hatteberg v. Hatteberg, 933
S.W.2d 522, 526 (Tex. App.—Houston [1st Dist.] 1994, no writ).
Howard contends the trial court abused its discretion when it denied her motion for
continuance, thus denying her an adequate opportunity for discovery and considering ETBU's
allegations that Howard had abused the discovery process. Howard initially sued ETBU June 1,
2001, followed by ETBU's motion for summary judgment, which was set for submission May 31,
2002. Howard filed a motion for nonsuit May 23, 2002, only to refile the lawsuit July 5, 2002. 
Because the present lawsuit was on file for only two months before the September 6, 2002, setting
for submission on ETBU's motion for summary judgment, however, Howard argues that she was not
permitted a reasonable time to conduct discovery and that the court should not be prejudiced against
her for having earlier exercised her right to file a nonsuit.
The question of whether a nonmovant has had adequate time to conduct discovery is decided
on a case-by-case basis. McClure v. Attebury, 20 S.W.3d 722, 729 (Tex. App.—Amarillo 1999, no
pet.). A litigant's failure to diligently pursue discovery will not authorize the granting of a
continuance. State v. Wood Oil Distrib., Inc., 751 S.W.2d 863, 865 (Tex. 1988). Howard's motion
specifically stated she was requesting the continuance because her attorney needed additional time
to prepare; however, the motion's supporting affidavit failed to give any indication of due diligence
exercised. 
The rule on summary judgment "clearly contemplates that the trial court will allow the parties
a reasonable opportunity to conduct discovery before granting summary judgment . . . allow[ing]
parties to obtain the fullest knowledge of facts and issues before the disposition of their case." 
Levinthal v. Kelsey-Seybold Clinic, P.A., 902 S.W.2d 508, 512 (Tex. App.—Houston [1st Dist.]
1994, no writ). Howard essentially argues that the discovery period was unreasonably abbreviated
by the trial court's denial of her motion for continuance. We would agree with this position if
Howard had only been allowed a total of two months for discovery, but the argument is more
difficult to accept considering that (1) the initial lawsuit by Howard against ETBU for the same
causes of action was filed in June 2001, (2) ETBU filed its first motion for summary judgment at the
end of May 2002, and (3) Howard, by taking a nonsuit, effectively delayed the summary judgment
submission deadline until September 2002. The real question is whether it is permissible for a trial
court to consider the amount of time available to the parties for discovery, even if the bulk of that
time preceded the nonsuit and refiling of the plaintiff's claims.
On this point, it is instructive that both parties seemingly treated the second lawsuit as a
continuation of the first, using discovery gathered during the first suit. Howard, for example, cites
at least three depositions taken in November 2001 and April 2002, while ETBU cites at least one
deposition and three affidavits dating from November 2001 to May 2002. When considering
whether a trial court abused its discretion in denying a motion for continuance, appellate courts may
consider such factors as (1) the length of time the case has been on file, (2) the materiality of the
discovery sought, and (3) whether due diligence was exercised in obtaining the discovery. Id. at 510. 
"Furthermore, we note that in cases where a trial judge's discretion comes into play, . . . it has long
been the rule that the judge may take into account the entire procedural history of the case."
GeoChem Tech Corp. v. Verseckes, 929 S.W.2d 85, 90 (Tex. App.—Eastland 1996), rev'd on other
grounds, 962 S.W.2d 541 (Tex. 1998); Waste Water, Inc. v. Alpha Finishing & Developing Corp.,
874 S.W.2d 940, 942 (Tex. App.—Houston [14th Dist.] 1994, no writ). Under the circumstances,
we cannot say that the parties in this case were not permitted a reasonable opportunity to conduct
discovery.
Also, the apparently brief period in which Howard had the opportunity to conduct discovery
since refiling the lawsuit does not take into account Howard's advantaged position of having known
for over three months—from the time ETBU filed its motion for summary judgment in the first
lawsuit to the time Howard filed her response in the second lawsuit—ETBU's grounds for the motion
and the opinion of its expert. The record suggests Howard neglected to avail herself of this
information. The supporting affidavit attached to Howard's motion for continuance indicates
Howard requested that ETBU make its facilities available to her expert, but this request was made
in a letter dated only two days before the summary judgment submission deadline. 
We hold it was within the trial court's sound discretion, when considering the motion for
continuance, to consider the time lapsed, and the actions taken and not taken, during pendency of
the first suit. Since Howard has not shown that the trial court clearly abused its discretion in
overruling her motion for continuance, it would be error for us to reverse this case because of that
ruling. Wood Oil Distrib., Inc., 751 S.W.2d at 865.
Conclusion
Because the amount collected for the recreational use of ETBU's property was less than twice
the amount of ad valorem taxes imposed, we hold that the recreational use statute applies and that
the standard of care ETBU owed to Howard was no greater than the degree of care owed to a
trespasser; we also hold that the trial court did not abuse its discretion in denying Howard's motion
for continuance.
We, therefore, affirm the trial court's grant of summary judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          November 12, 2003
Date Decided:             December 4, 2003