Kay McMILLAN, Appellant,

v.

Richard PARKER, Appellee.

No. 03–95–00198–CV.

Court of Appeals of Texas, Austin.

Nov. 15, 1995.

Rehearing Overruled Dec. 20, 1995.

Christopher L. Elliott, Pluymen & Ivy, P.C., Austin, for appellant.

Robert Macinnes, Mullen, Macinnes & Redding, Ltd., Austin, for appellee.

Before CARROLL, C.J., and JONES and B.A. SMITH, JJ.

JONES, Justice.

Appellant Kay McMillan sued appellee Richard Parker to recover damages for personal injuries allegedly sustained as a result of Parker's negligence. Based on its interpretation of the Texas "recreational-use statute," Tex.Civ.Prac. & Rem.Code Ann. §§ 75.001–.003 (West 1986 & Supp.1995), the trial court rendered summary judgment in favor of Parker. McMillan contends on appeal that the trial court erred in its application of the statute to the facts of this case and that material issues of fact exist with regard to the duties Parker owed her. We will reverse the summary judgment and remand the cause.

### FACTUAL AND PROCEDURAL BACKGROUND

After spending a Friday evening with Parker, McMillan accepted an invitation to accompany him to his ranch the following day to spend time together and to view wild boar on the property. Parker had originally intended to leave for the ranch early the next morning, but postponed his departure until the afternoon in order to include McMillan in his plans. On the trip to the ranch with McMillan, Parker purchased groceries in contemplation of entertaining his guest for the weekend. During a tour of the premises taken upon their arrival, McMillan and Parker climbed a tree to better observe the wild boar. After sitting in the tree for a period of time, McMillan lost her balance and fell, sustaining serious injuries to her feet and back.

McMillan brought suit against Parker alleging he breached his duties owed to her as a social guest on his property. Parker moved for summary judgment on the basis of Chapter 75 of the Texas Civil Practice and Remedies Code (hereinafter "Code"). The relevant statutory provisions limit the liability of a landowner as to persons permitted on the property for the express purpose of recreation:

(a) An owner, lessee, or occupant of agricultural land:

(1) does not owe a duty of care to a trespasser on the land; and

(2) is not liable for any injury to a trespasser on the land, except for wilful or wanton acts or gross negligence by the owner, lessee, or other occupant of agricultural land.

(b) If an owner, lessee, or occupant of agricultural land gives permission to another to enter the premises for recreation, the owner, lessee, or occupant, by giving the permission does not:

(1) assure that the premises are safe for that purpose;

(2) owe to the person to whom permission is granted a greater degree of care than is owed to a trespasser on the premises; or

(3) assume responsibility or incur liability for any injury to any individual or property caused by any act of the person to whom permission is granted.

(c) If an owner, lessee, or occupant of real property other than agricultural land gives permission to another to enter the premis-

es for recreation, the owner, lessee, or occupant, by giving the permission, does not:

> (1) assure that the premises are safe for that purpose;
>
> (2) owe to the person to whom permission is granted a greater degree of care than is owed to a trespasser on the premises; or
>
> (3) assume responsibility or incur liability for any injury to any individual or property caused by any act of the person to whom permission is granted.

(d) Subsections (a), (b), and (c) shall not limit the liability of an owner, lessee, or occupant of real property who has been grossly negligent or has acted with malicious intent or in bad faith.

Code § 75.002 (West Supp.1995). The Code defines "recreation" as "an activity such as hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, cave exploration, and waterskiing and other water sports." Code § 75.001(3).

Parker argued that the duty of care he owed McMillan was limited by the statute to that owed to a trespasser, that the evidence before the court did not support a claim of wilful or wanton acts or gross negligence, and that he was therefore entitled to judgment as a matter of law. Accepting this argument, the trial court granted summary judgment against McMillan.

On appeal, McMillan argues first that the recreational-use statute is inapplicable to this case and, second, that even if the statute does apply, fact issues exist as to whether Parker was grossly negligent.

## DISCUSSION

■ The standards for reviewing a summary judgment are well established: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). The function of summary judgment is not to deprive litigants of the right to trial by jury, but to eliminate patently unmeritorious claims and defenses. *See Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952).

■ In her first point of error, McMillan argues that the recreational-use statute is inapplicable under the facts of this case. Parker has the burden of establishing McMillan's inclusion under the statute to uphold the trial court's summary judgment. In his brief, Parker argues that the plain meaning of the statute limits a landowner's liability as to *all* recreational users, without distinction. We disagree.

We think the statutory limitation on liability was meant as an inducement for owners of certain types of private land to allow members of the general public to use such lands for recreational pursuits. The statute appears to have been intended as a limited exception to the traditional common-law duties owed by landowners for the specific purpose of creating recreational facilities for the general public. Transcripts of the debate over the 1981 amendment on the floor of the House of Representatives support our conclusion.[1] The legislature obviously considered the imposition of a lower standard of care for persons receiving the benefit of recreational access an appropriate measure for allocating costs under the statute.

■ Even if the literal meaning of the statutory language supports Parker's position, the legislative intent is too clearly contrary to permit such literalism:

> [C]ourts are not bound by the literal meaning of words in the construction of statutes, but when the intent and purpose of the Legislature is manifest from a consideration of a statute as a whole, words will be restricted or enlarged in order to give the statute the meaning which was intended by the lawmakers.

---

1. Debate on Tex. H.B. 749 on the Floor of the House, 67th Leg., R.S. 1–3 (April 30, 1981) (transcript available from House Committee Coordinator).

*Bridgestone/Firestone, Inc. v. Glyn–Jones,* 878 S.W.2d 132, 134 (Tex.1994) (quoting *Lunsford v. City of Bryan,* 156 Tex. 520, 297 S.W.2d 115, 117 (1957)).

An overly literal interpretation of the general terms used in the recreational-use statute could arbitrarily and unreasonably subject *all* classes of persons legally entering onto another's land to a lower standard of care. This would frustrate, rather than further, the statute's objective. Such a construction would deprive some classes (e.g., social guests) of common-law duties owed by a possessor of land, even though such guests do not benefit from the statute.

Consequently, application of the statute to social guests would unjustly result in a lower standard of care without providing any offsetting benefit. The statute does not give rise to an increased opportunity for social guests to legally enter the property owned by their host. Thus, because of their relationship with the property owner, social guests are clearly not the intended beneficiaries of the recreational-use statute.

The First Court of Appeals in Houston recently reached the same conclusion in *Lipton v. Wilhite,* 902 S.W.2d 598 (Tex.App.— Houston [1st Dist.] 1995, writ denied). On similar facts, the court in *Lipton* held that the recreational-use statute did not apply to social guests engaging in recreational activities, because such an application would "emasculate the common-law duties that a possessor of land owes to his licensee without furthering the statute's purpose." · 902 S.W.2d at 600.

In his attempt to justify including social guests under the statute, Parker directs our attention to section 75.003(c) of the statute, which states:

> This chapter applies only to an owner, lessee, or occupant of real property who:
> (1) does not charge for entry to the premises; or
> (2) charges for entry onto the premises, but whose total charges collected for the previous calendar year for all recreational use of the entire premises of the owner, lessee, or occupant are not more than twice the ad valorem taxes imposed on the premises for the previous calendar year.

Code § 75.003(c). Parker argues that the limited inclusion of business invitees would naturally implicate the inclusion of social guests since invitees are owed a higher legal duty. We do not reach this conclusion. We believe that the purpose of the foregoing section was to expressly prevent landowners who specialize in commercial recreation from wrongfully taking advantage of the statute. This supplemental qualification prohibits limiting liability for those occupants who benefit financially from persons entering the property for recreational purposes. The limited application of the statute to owners who charge a nominal entrance fee (presumably to defray costs of maintaining the property) rather than engaging in commercial recreation for profit is consistent with the overall purpose of the statute: to create and preserve land that the general public may use for recreational purposes. Section 75.003(c) should be interpreted in light of the statute in its entirety.

In summary, McMillan entered the property with Parker as his social guest. We conclude that, under the facts of this case, the nature of McMillan's relationship with Parker and her purpose for entering the property exclude her from the operation of the recreational-use statute. Since the statute does not apply to McMillan, she is not to be treated as a trespasser for purposes of determining the duties owed to her by the landowner, Parker. Thus, she necessarily had the status either of a licensee or an invitee. Whichever of those categories she occupied, Parker's standard of care toward her was such that the evidence before this Court does not support summary judgment.

### CONCLUSION

We hold the recreational-use statute inapplicable to this case and sustain point of error one. In light of this holding, we need not address McMillan's second point of error. We reverse the trial court's judgment and remand the cause to that court for further proceedings.