Danny R. PETERSON, Plaintiff-Appellant,†

STATE of Wisconsin DEPARTMENT OF HEALTH AND FAMILY SERVICES, and Community Living Alliance, Plaintiffs,

v.

MIDWEST SECURITY INSURANCE COMPANY, Defendant-Respondent,

WISCONSIN CARPENTERS' HEALTH FUND, and American Family Mutual Insurance Company, Defendants.

Court of Appeals

*No. 99–2987. Submitted on briefs June 23, 2000.—Decided August 17, 2000.*

2000 WI App 213

(Also reported in 617 N.W.2d 876.)

†Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Daniel A. Rottier* and *Vir-*

*ginia M. Antoine* of *Habush, Habush, Davis & Rottier, S.C.,* Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James W. Mohr, Jr.* of *Mohr & Anderson, S.C.,* Hartford.

Before Dykman, P.J., Roggensack and Deininger, JJ.

¶ 1. DEININGER, J.   Danny Peterson appeals a judgment dismissing his cause of action against Midwest Security Insurance Company. Peterson contends that Midwest Security is financially liable for injuries Peterson incurred when a tree stand owned by Harold Shaw, the company's insured, collapsed. The circuit court concluded that Peterson's claim is barred by Wisconsin's recreational immunity statute, WIS. STAT. § 895.52 (1997–98).[1] We agree that Shaw is immune from liability under § 895.52, and accordingly, we affirm.

## BACKGROUND

¶ 2.   Vernon and Culleen Peterson owned several acres of wooded land and allowed their nephew, Harold Shaw, to hunt deer on their land. With the Petersons' permission, Shaw constructed two tree stands on the property. Each stand consisted of a small wooden platform that was "cinched in against the tree with a chain." The stands were placed approximately twenty feet off the ground and were accessed by climbing a metal ladder and then climbing through the branches to the platform.

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

¶ 3. In the fall of 1996, Shaw brought Danny Peterson to the property and asked Vernon and Culleen if Peterson might hunt on their land. The two gave Peterson permission to hunt on their property, and Shaw gave him permission to use the tree stands he had constructed. Over the course of the next year, Peterson hunted two or three times on this property.

¶ 4. Peterson returned to the land in October 1997 to bow hunt for deer. Peterson approached a tree that contained one of Shaw's tree stands and climbed up the tree until he was level with the stand. He then tested the stand's sturdiness by placing his weight on the stand while still holding on to the trunk of the tree. The tree stand appeared to support his weight, so he let go of the tree, stepped onto the stand and pulled his bow up onto the stand. Less than five minutes later, Peterson saw a deer. As he waited to get a good shot at the deer, he turned his ankle "just a little bit," and the tree stand collapsed "like a trapdoor." Peterson fell approximately twenty feet to the ground, and incurred serious injuries.

¶ 5. Peterson filed a complaint against Shaw's insurer, Midwest Security, in which he alleged that Shaw had negligently "built, installed and maintained" the tree stand and that Shaw had negligently informed Peterson that the tree stand was "in good condition" and "safe to use."[2] Midwest Security moved for summary judgment on the grounds that: (1) Shaw was not negligent; (2) Peterson's claim was barred by Wisconsin's recreational immunity statute; (3) Peterson's claim relied on inadmissible evidence; and (4) the claim was barred by laches. The circuit court concluded that Shaw was immune from liability under the recrea-

_____

[2] Shaw died in April 1998. Peterson did not name his estate as a defendant in this action.

tional immunity statute, and granted Midwest Security's motion for summary judgment. Peterson appeals the judgment dismissing his claim against Midwest Security.

## ANALYSIS

¶ 6.   We review the circuit court's grant of summary judgment de novo, using the same methodology as the circuit court. *See M&I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175 (Ct. App. 1995). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.* at 496–97; *see also* WIS. STAT. § 802.08(2).

¶ 7.   The circuit court granted Midwest Security's motion for summary judgment because it concluded that Peterson's claim is barred by Wisconsin's recreational immunity statute, WIS. STAT. § 895.52. This statute, in general, immunizes a property owner from liability when a person is injured while engaging in a recreational activity on the owner's property. *See* § 895.52(2). The statute defines "recreational activity" as "any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure. . . ." *See* § 895.52(1)(g). "Property" is defined as "real property and buildings, structures and improvements thereon, and the waters of the state"; an "owner" is one who "owns, leases or occupies property." *See* § 895.52(1)(f), (d).

¶ 8.   The parties do not dispute that Peterson was engaged in a recreational activity at the time of his

injury.[3] The parties disagree, however, as to whether Shaw's tree stand constitutes "property" under WIS. STAT. § 895.52(1)(f) and whether Shaw satisfied the statutory definition of "owner" set forth in § 895.52(1)(d). To resolve these issues, we must interpret § 895.52. Statutory interpretation is a question of law and is subject to our de novo review. *See Truttschel v. Martin,* 208 Wis. 2d 361, 364–65, 560 N.W.2d 315 (Ct. App. 1997). The goal of statutory interpretation is to ascertain the intent of the legislature, and to discern this intent we look first to the plain language of the statute. *See Anderson v. City of Milwaukee,* 208 Wis. 2d 18, 25, 559 N.W.2d 563 (1997). If the statute's language is clear, we look no further and simply apply the statute to the facts and circumstances before us. *See Jungbluth v. Hometown, Inc.,* 201 Wis. 2d 320, 327, 548 N.W.2d 519 (1996).

¶ 9.    We first consider whether Shaw's tree stand constitutes "property" under WIS. STAT. § 895.52(1)(f). Peterson contends that the tree stand is not "property" because it is not a "building, structure or improvement" on real property. The circuit court determined that the tree stand is a "structure" under § 895.52(1)(f).[4] Peterson argues, however, that the record before the circuit court was insufficient to support this determination, and that the court erred in granting Midwest Security's motion for summary judgment because a material

---

[3] WISCONSIN STAT. § 895.52(1)(g) explicitly identifies "hunting" as a recreational activity.

[4] The circuit court also concluded that the tree stand is an "improvement" to real property because it adds value to the real property. Because we conclude that the tree stand is a "structure" under WIS. STAT. § 895.52(1)(f), however, we do not consider whether the tree stand is also an "improvement."

issue of fact remained as to whether the tree stand is, in fact, a "structure."

¶ 10.   The term "structure" is not defined by WIS. STAT. § 895.52, and should therefore be construed according to its common and ordinary usage. *See Ervin v. City of Kenosha*, 159 Wis. 2d 464, 483–84, 464 N.W.2d 654 (1991). Webster's Third New International Dictionary defines "structure" as "something constructed or built," and Black's Law Dictionary defines it as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2267 (1993); BLACK'S LAW DICTIONARY 1436 (7th ed. 1999). The record on summary judgment contains deposition testimony that establishes that the tree stand was constructed by Shaw, was made of wood, and was "cinched in against [a] tree with a chain." Based on this testimony, the circuit court concluded that the tree stand is "something constructed or built" and is therefore a "structure" under § 895.52(1)(f), and we agree.

¶ 11.   Concluding that the tree stand is a "structure" does not end our analysis, however, because Peterson also argues that the tree stand can be a "structure" under WIS. STAT. § 895.52(1)(f) and still not satisfy the statute's definition of "property." According to Peterson, a "structure" is not "property" under § 895.52(1)(f) unless it is owned in conjunction with the real property on which it stands. Shaw was the undisputed owner of the tree stand itself, but he did not own the underlying property to which the stand was attached. Peterson thus contends that the tree stand does not satisfy the recreational immunity statute's definition of "property."

¶ 12. To support this contention, Peterson relies on the wording and punctuation of WIS. STAT. § 895.52(1)(f). The statute defines "property" as "real property and buildings, structures and improvements thereon, and the waters of the state. . . ." *See* § 895.52(1)(f). Peterson insists that this language should be construed so as to delineate only two categories of property: (1) real property *along with* any buildings, structures and improvements thereon, and (2) the waters of the state. In Peterson's view, the lack of punctuation between "real property" and "buildings, structures and improvements" suggests that these two phrases cannot be severed from each other, and that a "building, structure [or] improvement" is not considered "property" unless it is indivisible from the real estate on which it stands. We conclude, however, that the plain language of § 895.52(1)(f) fails to support the interpretation that Peterson advocates. There is nothing in the language of the statute that implies that a structure or improvement is only "property" if it is owned in conjunction with the land beneath it.

¶ 13. Moreover, this court has previously considered the language in question, and we concluded that WIS. STAT. § 895.52(1)(f) defines three categories of property. We considered the definition of "property" in *Doane v. Helenville Mutual Insurance Co.*, 216 Wis. 2d 345, 352, 575 N.W.2d 734 (Ct. App. 1998), and concluded that the statute "delineates three categories of property whose owners may qualify for immunity: (1) real property; (2) buildings, structures and improvements thereon; and (3) waters of the state." Applying our analysis in *Doane* to the present facts, we conclude that the tree stand itself satisfies the statute's definition of "property" because it is a structure that is

situated on real property, and hence, that Shaw was an owner of property within the meaning of § 895.52.[5]

¶ 14.   Peterson argues next that extending immunity to Shaw contravenes the legislative intent behind the recreational immunity statute. We disagree. The recreational immunity statute was enacted to "encourage property owners to open their lands for recreational activities," and to encourage persons to construct structures and facilities on recreational lands. *See Linville v. City of Janesville*, 184 Wis. 2d 705, 715, 516 N.W.2d 427 (1994); *Crowbridge v. Village of Egg Harbor*, 179 Wis. 2d 565, 572–73, 508 N.W.2d 15 (Ct. App. 1993). By constructing a tree stand on his relatives' land and allowing Peterson to use it to hunt deer, Shaw was promoting the opening of this land for recreational purposes, thereby furthering the legislative intent of the statute.[6]

---

[5] We considered in *Doane v. Helenville Mutual Insurance Co.*, 216 Wis. 2d 345, 575 N.W.2d 734 (Ct. App. 1998), whether a portable fishing shanty was "property" under WIS. STAT. § 895.52(1)(f). After we explained that § 895.52 contemplates three kinds of property, we noted that the parties agreed that the ice fishing shanty was a "structure." *See id.* at 353. We ultimately concluded that the shanty was not "property" within the meaning of the statute, however, because it stood on a frozen lake and was therefore not "located, at least in part, on real property." *See id.*

[6] The circuit court also concluded that Shaw was immune from liability, in part, because Shaw was an "occupant" of the land upon which Peterson was injured. Peterson argues that Shaw's periodic use of this land was insufficient to make him an "occupant" under WIS. STAT. § 895.52(1)(d)1. We need not determine if Shaw was a statutory "occupant" of his relatives' land, however, because we conclude that the ownership of the underlying real property is not relevant to Shaw's immunity as owner of the tree stand. To be immune from liability under the recrea-

## CONCLUSION

¶ 15. For the reasons discussed above, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.

tional immunity statute, Shaw need only be an "owner" of "property" as defined by § 895.52. Peterson does not dispute that Shaw was the owner of the tree stand from which Peterson fell, and as we have discussed, the tree stand satisfies the statute's definition of "property." Accordingly, we need not consider whether Shaw also "occupied," within the meaning of the statute, the real property to which the tree stand was attached.