*Anthony Martinez v. Daniel Ross, et al.*, No. 2374, Sept. Term 2018.  Opinion by Arthur, J.

**NEGLIGENCE—PREMISES LIABILITY—RECREATIONAL USE STATUTE**

To encourage private landowners to make land available to the public for recreational and educational purposes, the General Assembly has enacted the Maryland Recreational Use Statute, codified at Maryland Code (1974, 2018 Repl. Vol.), §§ 5-1101 to 1109 of the Natural Resources Article.  This statute achieves its stated purpose by limiting the owner's liability in tort toward persons who enter on land for recreational and educational purposes.  *Id.* § 5-1102(a).  Where applicable, if a landowner allows other persons to enter onto land for recreational or education purposes and does not charge a fee, the landowner owes no duty of care to those persons to keep the premises safe or to warn of a dangerous condition (*id.* § 5-1103), except in cases of willful or malicious failure to guard or warn against a dangerous condition.  *Id.* § 5-1106.

In accordance with its express statutory purpose, the Recreational Use Statute shields a landowner from liability only if they make their land available to the general public.  When the operative sections of the statute discuss an owner's liability to "persons" or to "others," that language must be read to refer to members of the general public.  The statute does not limit an owner's liability to social guests.

Circuit Court for Frederick County
Case No. 10-C-17-001862

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2374

September Term, 2018

_____

ANTHONY MARTINEZ

v.

DANIEL ROSS, ET AL.

_____

Kehoe,
Nazarian,
Arthur,

JJ.

_____

Opinion by Arthur, J.

_____

Filed:  April 29, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

This case concerns the "Maryland Recreational Use Statute," which is codified at Maryland Code (1974, 2018 Repl. Vol.), §§ 5-1101 to 1109 of the Natural Resources Article ("NR"). The statute, which is derived from a model act that has been adopted in various forms in dozens of states, states that its "purpose" is "to encourage" owners to make their land "available to the public" for "recreational and educational purpose[s]." NR § 5-1102(a). The statute achieves its stated purpose by "limiting the owner's liability" in tort "toward any person who enters on land" for recreational and educational purposes. *Id.*

In what a number of courts have described as a "'drafting problem,'"[1] the operative portions of the statute can be read to limit the owner's tort liability to anyone who enters the land for recreational or educational purposes, including the owner's social guests, and not just members of the general public. In light of the stated purpose of the model act, however, courts elsewhere have held, almost uniformly, that the statute does not override an owner's common-law duty of care to social guests.

In this case, the Circuit Court for Frederick County ruled that, under the Recreational Use Statute, a landowner owed no duty to a social guest who suffered catastrophic injuries at a social gathering on the property. Accordingly, the court entered summary judgment in favor of the owner, and against the guest.

The guest appealed. We reverse.

---

[1] *See Estate of Gordon-Couture v. Brown*, 876 A.2d 196, 200 (N.H. 2005) (quoting *Conant v. Stroup*, 51 P.3d 1263, 1267 (Or. App. 2002)); *see also Loyer v. Buchholz*, 526 N.E.2d 300, 303 (Ohio 1988) (referring to the legislation as "inartfully drafted").

Appellee Penn Shop Farms LLC owns a property in Mt. Airy that is known as "Penn Shop Farm." Penn Shop Farms LLC is owned or controlled by appellee Daniel Ross. The LLC leases the property to Ross's business, appellee Ross Contracting Inc.

Ross's companies use Penn Shop Farm primarily to store excavating equipment and to deposit dirt from construction sites. Ross and others have constructed all-terrain vehicle (ATV) courses on the property.

Penn Shop Farm is not open to the public. The sole entrance is controlled with fencing and a metal gate that is locked with a chain and padlock. There are multiple warning signs at the entrance that prohibit entry. They read: "Keep Out"; "No Trespassing"; and "Posted. No Trespassing. Keep Out."

Ross planned a social event on the property for October 29, 2016. The event, which was called "Cookout, Bikes, and Music," was an all-afternoon gathering of friends and family members. Ross invited guests to bring and ride their ATVs and dirt bikes on the courses that he had constructed on the land. Of the persons who received invitations, approximately 90 attended, including appellant Anthony Martinez.

Ross and Martinez had met through business contacts and had become close friends. Ross acted as a mentor to Martinez, frequently providing him with personal and business advice as well as religious guidance. Ross invited Martinez to the cookout by Evite on October 17, 2016, and followed up the next day by text message to ensure his

---

[2] We recount the pertinent facts in the light most favorable to the appellant, the party who opposed summary judgment.

attendance. Ross explained to Martinez that the event was primarily for persons who, like Martinez, attended his church.

On the morning of October 29, 2016, Martinez helped Ross transport ATVs and other off-road vehicles from Ross's home to Penn Shop Farm. Once at Penn Shop Farm, Ross gave Martinez an ATV to ride. While traversing one of the courses on the ATV, Martinez was thrown over the handlebars. The ATV landed on top of him. He suffered a spinal injury that rendered him a quadriplegic.

Martinez brought suit in the Circuit Court for Frederick County, alleging that his injuries were caused by Ross's negligence. Martinez's experts appear to have opined that the accident occurred because of the defective design of the course.

Ross and his companies moved for summary judgment, claiming statutory immunity under the Recreational Use Statute. Martinez opposed the motion. He argued that the Recreational Use Statute did not apply because Ross did not make his land "available to the public."

After some back and forth, the circuit court eventually granted summary judgment in favor of Ross and his companies. The court determined that Ross made his property "'available to the public' for recreational purposes as contemplated by [the] words of the statute" when he invited "the large group over to Penn Shop Farm for a cookout, and to ride dirt bikes and ATVs." Thus, the court concluded that Ross and his companies were "entitled to the protection the statute affords," effectively immunizing them from liability for Martinez's injuries.

Martinez noted a timely appeal from the judgment.

Martinez raises a single issue for review: "Whether the circuit court erred in concluding, as a matter of law, that the immunity conferred by [the Recreational Use Statute] applies to a landowner, whose land is not open to the public generally for recreational use, to a claim arising from use of the land during an invitation[-]only party?"

## DISCUSSION

On review of the grant of summary judgment, this Court "must make the threshold determination as to whether a genuine dispute of material fact exists, and only where such dispute is absent will we proceed to review determinations of law." *Johnson v. Mayor & City Council of Baltimore*, 430 Md. 368, 376 (2013). In this case, there is no genuine dispute of material fact; the dispute involves the purely legal question of the correct interpretation of a statutory provision. *See Trim v. YMCA of Cent. Maryland*, 233 Md. App. 326, 332-33 (2017). Where the parties "'agree on the facts, leaving the interpretation of [a statute] as the sole legal issue[,]' the appropriate standard of review is de novo." *Richard Beavers Constr., Inc. v. Wagstaff*, 236 Md. App. 1, 13 (2018) (citing *Johnson v. Mayor & City Council of Baltimore*, 430 Md. at 376).

The stated purpose of the Recreational Use Statute is "to encourage any owner of land to make land . . . available to the public for any recreational and educational purpose." NR § 5-1102(a). To achieve that purpose, the statute limits an owner's

common-law liability "toward any person who enters" the land for any recreational or educational purpose. *Id.*[3]

At common law, when persons are injured while on the property of another, their legal status dictates the scope of an owner's duties to them. *See*, *e.g.*, *Macias v. Summit Mgmt., Inc.*, 243 Md. App. 294, 316-17 (2019). "[I]n general, the highest duty is owed to invitees; namely, the duty to 'use reasonable and ordinary care to keep the premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for the invitee's own safety will not discover.'" *Id.* at 317 (quoting *Deboy v. City of Crisfield*, 167 Md. App. 548, 555 (2006)). "At the bottom rung are trespassers and bare licensees, to whom is owed no more than to 'abstain from willful or wanton misconduct or entrapment.'" *Id.* (quoting *Deboy v. City of Crisfield*, 167 Md. App. at 555). In the middle is the social guest, or "licensee by invitation." *Id.* at 320. In the case of a social guest, an owner or occupier has a common-law duty to exercise reasonable care to make the premises safe for the guest or to warn the guest of known, dangerous conditions that the guest cannot reasonably discover. *Id.* at 321 (citing *Bramble v. Thompson*, 264 Md. 518, 521-22 (1972)).

---

[3] NR section 5-1101(f) defines the term "owner" to mean "the owner of any estate or interest in real property, whether possessory or nonpossessory, including the grantee of an easement." In this case, no one disputes that the definition of "owner" encompasses Penn Shop Farms LLC (the landowner), Ross Contracting Inc. (the lessee), and Ross himself (the owner of the landowner and the lessee).

Where the Recreational Use Statute applies, however, it alters an owner's common-law liability in several respects.

First, section 5-1103 significantly diminishes an owner's duty of care:

> Except as specifically . . . provided in § 5-1106 of this subtitle, an owner of land owes no duty of care to keep the premises safe for entry or use by others for any recreational or educational purpose, or to give any warning of a dangerous condition . . . on the premises to any person who enters on the land for these purposes.

The exception in NR section 5-1106 applies only in the case of a "willful or malicious failure to guard or warn against a dangerous condition . . . or for injury suffered where the owner of the land charges the person who enters or goes on the land." Hence, under sections 5-1103 and 5-1106, if an owner allows "others" to come onto the land for recreational or educational purposes and does not charge a fee, the owner has the lowest duty in the law of owners and occupiers -- the duty owed to "trespassers and bare licensees, . . . to 'abstain from willful or wanton misconduct or entrapment.'" *Macias v. Summit Mgmt., Inc.*, 243 Md. App. at 317 (quoting *Deboy v. City of Crisfield*, 167 Md. App. at 555).

Section 5-1104 contains additional language concerning the limited liability of owners to "persons" who use the property for recreational or educational purposes:

> [A]n owner of land who either directly or indirectly invites or permits without charge persons to use the property for any recreational or educational purpose . . . does not by this action:
>
> (1) Extend any assurance that the premises are safe for any purpose;
>
> (2) Confer upon the person the legal status of an invitee or licensee to whom a duty of care is owed; or

6

(3) Assume responsibility for or incur liability as a result of any injury to the person or property caused by an act of omission of the person.

NR § 5-1104.

Finally, section 5-1109(a) specifically addresses a landowner's liability to "person[s]" who are allowed to use part of the property to ride an "off-highway vehicle" or "OHV":

> If a landowner agrees to the use of a defined part of the landowner's real property . . . for the use of an OHV, . . . any person who uses the part of the real property impliedly consents to adhere to every law, to observe every safety precaution and practice, . . . and to assume all responsibility and liability for the person's safety and property while . . . using an OHV . . . on the landowner's real property.[4]

An ATV is a type of OHV.  *See* NR § 5-1101(e).

The dispute in the present case centers on the import of the term "available to the public," which appears in the recitation of the statutory purpose in section 5-1102. Martinez contends that the statute applies only to owners who open their land to the general public.  He argues that the operative provisions of the statute, which do not directly refer to the public, must be read in light of section 5-1102(a)'s stated purpose of encouraging owners to make their land available to the public in exchange for limited liability.  Otherwise, he maintains, the legislative purpose would be rendered nugatory.

Ross counters that the "plain language" of the Recreational Use Statute does not require that owners make their land available to the general public as a condition of

---

[4] In 2017, after Martinez's injury, the General Assembly amended NR section 5-1109(a) to extend it to hunters.  It had already included cross-country skiers as well as OHV riders.

7

receiving limited liability. He asserts that Martinez "reads far too much into" the purpose section of the statute, while ignoring the limitations of liability conferred by section 5-1103 (landowners owe no duty of care to "any person" to keep their premises safe or to warn of dangerous conditions); section 5-1104 (by inviting or permitting "persons" to use the property for recreational or education purposes, landowners do not extend any assurance that the property is safe, do not confer the status of invitee or licensee upon any "person," and do not assume responsibility for any injury to the "person"); and section 5-1109(a) ("person[s]" who use an OHV on the property assume all responsibility and liability for their own safety). Focusing on the language that limits a landowner's liability "*toward any person* who enters on land" in section 5-1102(a) (the "purpose" section), Ross argues that the statute unambiguously confers immunity from liability to owners who make their land available for recreational use.

"When we are called upon to interpret any statute, we first examine the ordinary meaning of the enacted language, reading the statute as a whole to avoid an interpretation that might nullify another part of the statute." *Richard Beavers Constr., Inc. v. Wagstaff*, 236 Md. App. at 14 (citing *Reger v. Washington Cty. Bd. of Educ.*, 455 Md. 68, 96 (2017)). "[T]o understand the meaning of statutory language, we must look beyond individual words and clauses to the larger context, including other surrounding provisions and the apparent purpose of the enactment." *Trim v. YMCA of Cent. Maryland*, 233 Md. App. at 334-35 (citing *Williams v. Peninsula Reg'l Med. Ctr.*, 440 Md. 573, 580-81 (2014)). We do "not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone." *See*, *e.g.*,

*Lockshin v. Semsker*, 412 Md. 257, 275 (2010). "Even in instances 'when the language is unambiguous, it is useful to review legislative history of the statute to confirm that interpretation and to eliminate another version of legislative intent alleged to be latent in the language.'" *Blackstone v. Sharma*, 461 Md. 87, 113 (2018) (quoting *State v. Roshchin*, 446 Md. 128, 140 (2016)).

The Recreational Use Statute became a part of Maryland law in 1966, but in the ensuing 54 years, it has been interpreted in only one reported decision: *Fagerhus v. Host Marriott Corp.*, 143 Md. App. 525 (2002). In that case a runner slipped and fell on black ice on a fitness trail that ran across several properties in an office park. *Id.* at 529-30. He asserted claims against the owner of the portion of the trail where his fall occurred. *Id.* at 530. Applying the Recreational Use Statute, this Court held that the owner had no duty to make the trail safe for the runner. *Id*. at 540. That decision is of limited utility in this case, however, because there was no question that the fitness trail was open to the general public.

*Fagerhus* does remind us, however, that, in interpreting a statute, we may look beyond the words of the enactment itself to "'external manifestations of intent or general purpose available through other evidence,' including 'a bill's title and function[,] paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal.'" *Id.* at 536 (quoting *Williams v. City of Baltimore*, 359 Md. 101, 116 (2000) (internal quotation marks and citation omitted)). In

9

the words of the *Fagerhus* Court, "[t]here is a relative wealth of legislative material to aid in our interpretation of the" Recreational Use Statute.  *Id.* at 536 n.3.

The Recreational Use Statute is derived from a model act that was drafted by the Council of State Governments in 1965.[5]  *See* 1966 Md. Laws, Chap. 292; 24 Council of State Governments, *Suggested State Legislation, Public Recreation on Private Lands: Limitations on Liability* 150 (1965).  The Council drafted the model act in response to a growing trend among states to limit the common-law liability of owners who made their land available to the public for recreational purposes.  Noting an increasing "awareness of the need for additional recreational areas to serve the general public," the Council explained the purpose of the act as follows:

> [I]n those instances where private owners are willing to make their land ***available to members of the general public*** without charge, it is possible to argue that every reasonable encouragement should be given to them. . . . [L]egislation has been enacted limiting the liability of private owners who make their land available to the public for one or more public recreational purposes.  This is done on the theory that ***it is not reasonable to expect such owners to undergo the risks of liability for injury to . . . strangers*** from whom the accommodating owner receives no compensation or other favor in return.

24 Council of State Governments, *Suggested State Legislation, Public Recreation on Private Lands: Limitations on Liability*, *supra*, 150, preamble.  (Emphasis added.)

---

[5] Maryland, along with 15 other states, adopted the model act with essentially no change.  *See Gibson v. Keith*, 492 A.2d 241, 248 (Del. 1985).  The General Assembly has amended the statute from time to time to introduce variations from the model act.  One such variation is NR section 5-1109, which generally states that if an owner agrees to the use of a defined part of the property for the use of OHVs, the persons who use that part of the property assume all responsibility and liability for their safety while using an OHV.

In view of the express purpose of the model act, courts have recognized that the legislation contains a statutory *quid pro quo*: in exchange for "opening lands for recreational use by the public," owners receive "a special statutory grant of qualified immunity from suit by such recreational users." *Gibson v. Keith*, 492 A.2d 241, 246 (Del. 1985); *accord Conant v. Stroup*, 51 P.3d 1263, 1267 (Or. Ct. App. 2002) ("the model act expressed a basic *quid pro quo* in its declaration of policy, namely, permission *to the general public* to use private land for recreational purposes in exchange for immunity from liability for resulting injuries") (emphasis in original); *Bucki v. Hawkins*, 914 A.2d 491, 497 (R.I. 2007) (stating that "statutory immunity cannot attach when property is not held open to the public for recreational activity"); *McMillan v. Parker*, 910 S.W.2d 616, 618 (Tex. App. 1995) (stating that "the statutory limitation on liability was meant as an inducement for owners of certain types of private land to allow members of the general public to use such lands for recreational pursuits"); *see also Estate of Gordon-Couture v. Brown*, 876 A.2d 196, 200 (N.H. 2005).

"[A]n invitation or permission (direct or indirect) extended by a landowner to the public to enter without charge for recreational purposes is a *sine qua non* for invoking the statute's protective benefits." *Gibson v. Keith*, 492 A.2d at 244. "If private landowners will make their lands available to *the general public* for recreational purposes, the state will 'trade' that public access for immunity from liability that might result from the use of the property." *Conant v. Stroup*, 51 P.3d at 1266 (emphasis in original).[6]

---

[6] Delaware and Oregon are among the 16 states that, like Maryland, adopted the model act with essentially no changes. *See Gibson v. Keith*, 492 A.2d at 248.

11

But despite the clear expression of a statutory purpose to limit owners' liability only if they open their land to "the public," the operative provisions of the statute -- the provisions that announce and describe the specific limitations on an owner's liability -- can be read more broadly, to limit an owner's liability to anyone who uses the property for recreational or educational purposes. In Maryland, for example, NR section 5-1103 limits an owner's liability to "others" who enter or use the land for recreational or educational purposes; NR section 5-1104 limits the owner's liability to "persons" whom the owner invites or permits to use the property, without charge, for recreational or educational purposes; and NR section 5-1109 limits the owner's liability to any "person" who uses a defined part of the property to ride an OHV. Read literally and in isolation from the expression of the statutory purpose, the operative portions of the statute could be understood to limit an owner's common-law liability to anyone, including social guests, who came onto the property for educational or recreational purposes.

Many courts have recognized the "'basic drafting problem'" (*Estate of Gordon-Couture v. Brown*, 876 A.2d at 200 (quoting *Conant v. Stroup*, 51 P.3d at 1267)) in the tension between the expressed statutory purpose, which is to encourage owners to open their land to the general public, and the operative provisions, which can be read to grant limited liability against the claims of ordinary invitees and licensees. "The problem, of course, was that, if read literally and in isolation, the immunity provisions effectively would nullify the law of premises liability as it pertains to invitees: Any time an individual is invited to use an owner's back yard for croquet, immunity would apply." *Conant v. Stroup*, 51 P.3d at 1267. Because the model act was "inartfully drafted" (*Loyer*

12

*v. Buchholz*, 526 N.E.2d 300, 303 (Ohio 1988)), "[a] cursory reading . . . might lead one to conclude that, with the exception of willful and wanton conduct, the [a]ct immunizes all land owners who invite or permit without charge any person to use such property for recreational . . . purposes." *Snyder v. Olmstead*, 634 N.E.2d 756, 760 (Ill. App. Ct. 1994).

"The response of the state courts who addressed the problem has been uniform." *Conant v. Stroup*, 51 P.3d at 1267. These courts have interpreted the model act "to effectuate its purpose by concluding that permission to 'any person' refers to any person *as a member of the general public* to use private property for recreational purposes." *Id.* (emphasis in original) (collecting numerous authorities); *accord Estate of Gordon-Couture v. Brown*, 876 A.2d at 201; *Ouradnik v. Ouradnik*, 897 N.W.2d 300, 308 (Minn. Ct. App. 2017).

This drafting problem, which has been encountered and addressed by other states, is precisely the problem with which we are confronted in the instant case. This problem has not yet been addressed in Maryland. But because the Recreational Use Statute is nearly identical to the model act, we can and should look for guidance from other states that have construed the same or similar legislation. *See Blitz v. Beth Isaac Adas Israel Congregation*, 352 Md. 31, 43 (1998).

The Utah Supreme Court's decision in *Perrine v. Kennecott Mining Corp.*, 911 P.2d 1290 (Utah 1996), is representative. In that case, an owner leased the property to a community organization, which, in turn, permitted a rodeo club to use it. *Id.* at 1290-91. The club posted "no trespassing" signs and did not permit members of the general public

13

to use the property. *Id*. at 1291. One of the club members extended a social invitation to two guests to go horseback riding on the property. *Id.* When one of the guests was injured and sued the owner and community organization, the defendants successfully invoked the immunity provisions of Utah's Landowner Liability Act, which is based on the model act. *See* Utah Code Ann. § 57-14-1 *et seq.* On appeal, the injured guest argued that, to gain immunity under the Act, "landowners must make their land available to all members of the public, not just a few." *Perrine v. Kennecott Mining Corp*., 911 P.2d at 1291.

The Utah Supreme Court agreed. The court began by observing that the stated purpose of the act is to make land available "to the public." *Id.* at 1292. The ordinary meaning of the term "public," the court noted, is "'[o]pen to all; . . . open to common use . . . not limited or restricted to any particular class of the community.'" *Id.* (quoting BLACK'S LAW DICTIONARY 1393 (4th ed. 1951)). The court concluded that, to effectuate the purpose of the act, its provisions must be limited to circumstances in which an owner makes land "'open to all'" and access is "not 'restricted to any particular class in the community.'" *Perrine v. Kennecott Mining Corp*., 911 P.2d at 1293 (quoting BLACK'S LAW DICTIONARY, *supra*, 1393).

The court explained that any other construction of the statute would conflict with its intended purpose: "[i]f the plain meaning of the Landowner Liability Act was ignored and landowners who opened their land to only selected members of the public could nevertheless qualify for immunity, the result would be nonsensical and contrary to the Act's stated purpose." *Id.* "For example, operation of the Act under the proposed

14

interpretation would immunize even homeowners from the negligence claims of social guests invited for recreational purposes." *Id.* Therefore, the court determined that the community organization did not qualify for immunity under the act because it opened the land "to an exclusive group for its own recreational purposes, not those of the general public." *Id.* at 1294.

Many courts have reached the similar conclusion that owners cannot take advantage of the limitations on liability in statutes based on the model act unless they make their property available to the general public. *See*, *e.g.*, *Mozier v. Parsons*, 852 F. Supp. 925, 932 (D. Kan. 1994) (following decisions that hold that "a landowner receives the protection of the statute only by permitting free use of the land and facilities by the general public"); *Gibson v. Keith*, 492 A.2d at 244 (holding that Delaware's recreational use statute limits the liability of owners only if they directly or indirectly invite or permit the public at large to use their property, without charge, for recreational or educational purposes); *Loyer v. Buchholz*, 526 N.E.2d at 302 (stating that, "[s]ince the purpose of the [Ohio] legislation conferring immunity is to encourage owners of premises suitable for recreational pursuits to open their lands for public use, it follows that where the land in question is not held open to the public, the immunity does not apply[]"); *Snyder v. Olmstead*, 634 N.E.2d at 761 (stating that "the purpose of the [Illinois] Recreational Use Act would not be advanced by applying the Act to a situation where an owner does not open his property to the public"); *Peterson v. Western World Ins. Co.*, 536 So.2d 639, 643-44 (La. Ct. App. 1988) (holding that a hunting club had not made its land available to the public, and hence could not claim limited liability under the Louisiana version of

15

the model act, where the injured persons were members of the club itself); *Hughes v. Quarve & Anderson Co.*, 338 N.W.2d 422, 427 (Minn. 1983) (holding that Minnesota's version of the model act "has no application where the defendant landowner does not offer the [property] in question for public use"); *LePoidevin by Dye v. Wilson*, 330 N.W.2d 555, 563 (Wis. 1983) (holding that the statutory limitation of liability was unavailable where the owner had "not opened his land to the 'public' generally" or "given permission to one or more members of the 'public' to use the land for recreational purposes"); *see also Bucki v. Hawkins*, 914 A.2d 491, 497-98 (R.I. 2007) (stating, in dicta, that because the legislation's stated intent is to encourage owners to open their properties to the public for recreational use, it would be "absurd" to shield owners from liability for injuries suffered by guests).

We agree with the many courts that have interpreted statutes like the Recreational Use Statute in accordance with their express purpose: to permit owners to invoke the statutory limitations on liability only if they make their land available to the general public. Thus, we hold that, when the operative sections of the Recreational Use Statute discuss the limitations on an owner's liability to "persons" or to "others," that language must be read to refer to "persons" or "others" *as members of the general public*. *Conant v. Stroup*, 51 P.3d at 1267. The statutory language does not limit an owner's liability to

16

social guests. To read the statute otherwise is to commit the error of reading its sections in isolation, and not reading the statute (including the expression of purpose) as a whole.[7]

Ross cautions against reading too much into the statutory statement of purpose while (in his words) "ignoring" other express provisions, such as the operative provisions that announce and describe the limitations on liability. His argument misses the mark. In holding that their versions of the model act apply only to owners who open their land to the general public, other courts are not "ignoring" the operative provisions of the statute; they are construing those provisions in light of the statute as a whole, including the express language concerning the purpose of the statute.

In any event, even in states that have omitted the model act's "purpose" section from their legislation, courts have determined that the legislative purpose was to limit liability only for owners who make their land available to the general public. The case of *McMillan v. Parker*, 910 S.W.2d 616 (Tex. App. 1995), is illustrative of this point. There, the owner invited a social guest to watch wild boar roaming over his property. *Id.* at 617. The guest lost her balance and fell from a lookout, sustaining serious injuries in

---

[7] Ross observes that under NR section 5-1109(a), a statutory addition that is apparently unique to Maryland, if an owner allows a "person" to use an OHV on a defined part of the property, that "person" "impliedly consents to adhere to every law, to observe every safety precaution and practice, . . . and to assume all responsibility and liability for the person's safety and property." He argues that the language of NR section 5-1109(a) is broad enough to reach a "person" such as Martinez. We disagree. Section 5-1109 is part of the Recreational Use Statute, and thus it must read in accordance with the express purpose of that statute, which is to induce owners to make their property available to the public by limiting their tort liability if they do. Therefore, the term "person," within the meaning of NR section 5-1109(a), means a person *as a member of the general public.*

17

the fall. *Id.* In his defense, the owner invoked Texas's recreational use statute, which has operative provisions similar to NR §§ 5-1103 and 5-1104, but no "purpose" section like NR section 5-1102. *Id.*; *see* Tex. Civ. Prac. & Rem. Code § 75.001 to -.003 (1995).

Nonetheless, upon reviewing the transcripts of the legislative debate concerning the statute, the Texas court determined that "the statutory limitation on liability was meant as an inducement for owners of certain types of private land to allow members of the general public to use such lands for recreational pursuits." *McMillan*, 910 S.W.2d at 618. On this basis, the court concluded that an "overly literal interpretation" of the statute's general terms would frustrate the statute's objective by "unreasonably subject[ing] *all* classes of persons legally entering onto another's land to a lower standard of care." *Id.* at 619.

As any number of courts have recognized, any other conclusion would eviscerate longstanding principles of the common law by relieving an owner of virtually all liability to social guests who have been invited or permitted to use the land for recreational purposes. *Snyder v. Olmstead*, 634 N.E.2d at 761; *see Estate of Gordon-Couture v. Brown*, 876 A.2d at 201; *Conant v. Stroup*, 51 P.3d at 1267-68; *McMillan v. Parker*, 910 S.W.2d at 619; *see also Perrine v. Kennecott Mining Corp.*, 911 P.2d at 1293. "It would be both absurd and contrary to the Legislature's stated intent to shield every landowner from liability for injuries that guests suffer while engaging in recreational activity on their property." *Bucki v. Hawkins*, 914 A.2d at 497-98. We are disinclined to adopt an interpretation that is both "nonsensical and contrary to the Act's stated purpose." *Perrine v. Kennecott Mining Corp.*, 911 P.2d at 1293. We are similarly disinclined to adopt such

18

a broad interpretation of a statute that is in derogation of the common law. *See*, *e.g.*, *Mummert v. Alizadeh*, 435 Md. 207, 214 (2013) (stating that "[s]tatutes in derogation of the common law are strictly construed").

Ross cites a handful of cases that, he says, point in a different direction. Some of the cases do not support his position; others were decided under statutes that differ markedly from the Maryland statute and the model act; and one is unpersuasive.

Ross relies, first, on two cases that were cited in this Court's opinion in *Fagerhus*: *Johnson v. Unocal Corp.*, 26 Ca1. Rptr. 2d 148 (Cal. Ct. App. 1993), and *Peterson v. Midwest Security Insurance Co.*, 617 N.W.2d 876 (Wis. 2000). Although there was no question in *Fagerhus* that the owner had opened his property to the general public, Ross argues that the citation of those cases represents a kind of silent endorsement of what he calls "the broad applicability" of the Recreational Use Statute. We doubt that this Court intended to endorse or adopt every aspect in the reasoning of those cases when it cited them for the uncontroversial proposition that owners can partake of the statutory grant of limited liability by making private land available "for public recreational purposes in precisely the manner that the [Recreational Use Statute] is designed to encourage." *See Fagerhus v. Host Marriott Corp.*, 143 Md. App. at 540. But even if it somehow did, nothing in those cases supports Ross's position that he can partake of the statutory grant of limited liability in this case.

In *Johnson v. Unocal Corp.*, 26 Ca1. Rptr. 2d at 150, the trial court expressly found that Unocal, the owner, had "made its picnic grounds available to the public." Thus, the issue in *Unocal* was not whether the California statute protected the owner

from the claims of a social guest — and in fact, the plaintiff was not Unocal's guest, but rather the guest of his employer, which was using Unocal's property without charge. *Id.* The only issue in *Unocal* was whether Unocal could claim the statutory limitation on liability even though it had arguably received consideration for the use of its land when the plaintiff's employer agreed to hold it harmless. *Id.* The California court held that the hold-harmless agreement did not amount to consideration and, thus, that Unocal qualified for immunity under the California act. *Id.* *Unocal* has nothing to say about the issues in this case.

In *Peterson v. Midwest Security Insurance Co.*, 617 N.W.2d 876, 878 (Wis. Ct. App. 2000), a hunter was injured when a tree stand collapsed. An issue in *Peterson* was whether the tree stand was "property," within the meaning of the Wisconsin statute, even though the stand's "owner" had constructed it over land that was owned by someone else. *Id.* at 879. The court did not consider whether the owner of the stand had made the property available to the public, because the Wisconsin legislature has eliminated that requirement.[8]

---

[8] Under the Wisconsin statute, if an owner invites a social guest to engage in recreational activities on the owner's property, the owner is immune from the guest's tort claims unless the injury occurs on "[p]latted land," "[r]esidential property," or "[p]roperty within 300 feet of a building or structure on land that is classified as commercial or manufacturing" under Wisconsin law. Wisc. Stat. § 895.52(6)(d) (2014). In other words, under Wisconsin law, an owner will typically be immune from the tort claims of a social guest who has been invited to engage in recreational activities on the owner's property if the property is located in a rural, wilderness, or exurban area. Maryland law contains no similar provision.

Ross also relies on *Coogan v. D'Angelo*, 886 N.Y.S.2d 306 (App. Div. 4th Dep't 2009), which concerns N.Y. Gen'l Obligations Law § 9-103, a recreational use statute that is similar to Maryland's, except for the omission of the "purpose" section. The issue in *Coogan*, 886 N.Y.S.2d at 308, was whether the owner could take advantage of the statutory limitations on liability even though he had attempted to bar the public from entering his property by placing a metal cable across a path.[9] Perhaps because the New York statute does not expressly require owners to open their land to the public in order to obtain the grant of limited liability, the New York courts have held that their statute "'applies to landowners who open their land to recreationalists, as well as to those who attempt to prevent members of the public from using their lands.'" *Id.* (quoting *White v. City of Troy*, 735 N.Y.S.2d 648, 650 (App. Div. 3d Dep't 2002)). A Maryland court could not reach the same conclusion, because of the express statement of the statutory purpose to link the limitation on liability to the owner's decision to open land to the public.[10]

Ross goes on to cite *Holden v. Schwer*, 495 N.W.2d 269, 274 (Neb. 1993), which holds that the Nebraska statute does not require "a landowner to fully dedicate his property to the public before the landowner comes under the protection of the act." "Rather, in order to facilitate the purpose of the act, a landowner need only allow some

_____

[9] The plaintiff's child had been killed after he struck the cable while riding an all-terrain vehicle. *Id.*

[10] In any event, because *Coogan* involves the claim of a trespasser, it tells us nothing about how a New York court would evaluate the claim of a social guest like Martinez.

21

members of the public, on a casual basis, to enter and use his land for recreation purposes to enjoy the protection of the act." *Id.* Notably, the *Holden* decision pertains solely to claims by members of the public, not to claims by social guests like Martinez.

Moreover, *Holden* is hardly alone in holding that owners may invoke the limitations on liability in legislation based on the model act even if they do not open their property to the public 24 hours a day, seven days a week, and 365 days a year: in one of the many cases that condition the limitations on liability on the grant of public access, one court stressed that, "to seek protection under the Act, a landowner need not 'allow all persons to use the property at all times.'" *Snyder v. Olmstead*, 634 N.E.2d at 761 (quoting *Johnson v. Stryker Corp.*, 388 N.E.2d 932, 935 (Ill. App. Ct. 1979)). Thus, under Maryland law, owners can invoke the statutory limitations on liability if they open part of their property for cross-country skiing (NR § 5-1109(a)), which is unlikely to occur except during the winter. Similarly, owners may invoke the statutory limitations on liability if they open some or all of their land to the general public to hunt during hunting season, to fish when fishing is permitted, to watch migratory birds during the seasonal migrations, etc.[11]

---

[11] Under NR sections 5-1107 and 5-1108, owners may grant written permission to members of the public to enter upon their land. Section 5-1108(b) expressly envisions that the owner may agree to allow public access only on certain dates. In addition, section 5-1108(b) implies that, by agreement, the owner may impose limitations on the public's access. Those limitations might include limitations on when members of the public can enter, where they can go, and what they can do while they are there.

Finally, Ross relies on *Cudworth v. Midcontinent Communications*, 380 F.3d 375, 379 (8th Cir. 2004), in which a federal court interpreted North Dakota's version of the model act to mean that owners need not open their property to public use in order to claim the statutory limitations on liability. In reaching that decision, the court downplayed the purpose of the statute, writing that the legislation does not "explicitly require that owners open property to public use before receiving immunity, nor does it specify that immunity applies only where entrants are invitees or licensees." *Id.* Proceeding from that premise, the court reached a conclusion that is completely out of step with the vast majority of cases that have interpreted the model act. We are unpersuaded by *Cudworth*.[12]

The circuit court correctly understood that Ross could invoke the statutory limitations on liability only if he had made the property available to the public. The court reasoned, however, that Ross had made the property available to the public because he had invited what the court regarded as a sufficiently "large" number of social guests to the social gathering on the property. The court's reasoning is untenable for at least two reasons.

---

[12] In any event, like *Coogan*, the New York case, *Cudworth* concerns the claim of a trespasser, not a social guest, like Martinez. *Id.* at 377-78. Therefore, even if *Cudworth* were persuasive, it would not support the proposition that an owner may invoke the Recreational Use Statute to defeat the claims of a social guest like Martinez.

First, there is a qualitative difference between making one's property "'open to all'"[13] and making the property available only to a discrete number of invited social guests, however "large" that number might be. A property is open to all only if access is "not 'restricted to any particular class in the community.'" *Perrine v. Kennecott Mining Corp.*, 911 P.2d at 1293 (quoting BLACK'S LAW DICTIONARY, *supra*, 1393). If access is restricted only to invited social guests, it is obvious that access is then restricted to a particular class in the community. In that event, the property is not open to the public. *Id.*

Second, the concept of a "large" group is inherently ambiguous and subjective. We cannot discern a principled basis on which a court could say, as a matter of law, that a group of invited social guests was so "large" that it was as though the general public had been allowed to use the property. In this case, there were about ninety guests. Would the owner be entitled to the statutory limitations on liability if there were eighty? Fifty? Thirty?[14]

---

[13] *Perrine v. Kennecott Mining Corp.*, 911 P.2d at 1293 (quoting BLACK'S LAW DICTIONARY, *supra*, 1393).

[14] Ross observes that he allowed his guests to invite friends and acquaintances and, thus, that he had not personally invited everyone who attended. We don't see what difference this makes. Ross had unquestionably invited Martinez, so Martinez was unquestionably Ross's social guest and not a member of the general public. Furthermore, if invited guests are told that they may bring guests, the guests of the invited guests would appear to be social guests of the host just as much as the invited guests themselves. *Cf. Corinaldi v. Columbia Courtyard Inc.*, 162 Md. App. 207, 221 (2005) (observing that, "[g]enerally, a property owner owes the same duty to the guest of an invitee as it owes to the invitee himself," and holding that a hotel owed a duty of care to the guest of a hotel guest).

Turning to the facts of this case, Ross is not entitled to the statutory immunity conferred by the Recreational Use Statute.  First, the property, Penn Shop Farm, is not open to the general public, even on a limited basis.  The entrance to the farm is blocked by a locked metal gate and is marked with multiple warning signs prohibiting entry to the public.  Although Ross had permitted others to use his property for recreational uses in the past, entry was limited to friends and family members.[15]

Moreover, by hosting "Cookout, Bikes, and Music," Ross was not making his land available to the public, as contemplated by the statute.  As explained by the Council of State Governments, recreational use statutes such as ours limit the liability of owners who open their land to the public "on the theory that *it is not reasonable to expect such owners to undergo the risks of liability for injury to . . . strangers* from whom the accommodating owner receives no compensation or other favor in return."  24 Council of State Governments, *Suggested State Legislation, Public Recreation on Private Lands: Limitations on Liability*, *supra*, 150, preamble.

Martinez was far from a "stranger" to Ross.  He was a friend.  On October 29, 2016, he was one of the invited social guests on Ross's property.  The circuit court,

___

[15] We caution that, under the Recreational Use Statute, it is not in itself dispositive that an owner has posted notices informing the public that the land is private.  NR section 5-1107 permits an owner to post notices to that effect "in conspicuous places."  Section 5-1107 goes on to state that "[t]he landowner, by written consent, may grant permission," to individual members of the public at large, "to enter the land."  That did not occur in this case.  We express no opinion about whether owners can claim the limitations on liability in the Recreational Use Statute if they post notices informing the public that the land is private, but allow the public to use all or part of their property for educational or recreational purposes without granting permission in accordance with NR § 5-1107.

therefore, erred in entering summary judgment against Martinez on the basis of the

Recreational Use Statute.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  COSTS TO BE PAID BY APPELLEES.**