NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 42

No. 2020-247

| | |
|---|---|
| Cameron Crogan | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orleans Unit, |
| | Civil Division |
| | |
| Pine Bluff Estates et al. | April Term, 2021 |

Mary Miles Teachout, J.

Bridget C. Asay of Stris & Maher LLP, Montpelier, and Gregory P. Howe, Law Office of
  Gregory P. Howe, Newport, for Plaintiff-Appellant.

Stephen D. Ellis and Pamela L.P. Eaton of Paul Frank + Collins P.C., Burlington, for
  Defendant-Appellee Douglas B. Spates, in His Individual Capacity.

Adrienne Shea and Pietro J. Lynn of Lynn, Lynn, Blackman & Manitsky, P.C., Burlington, for
  Defendants-Appellees.


PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.


¶ 1. **EATON, J.** Plaintiff was seriously injured when he rode his motorbike into a cable strung across a beach access road at the lakeside residential development where he lived with his family. As a result, his mother filed a negligence action against several entities related to the development, including the homeowners' association and a separately formed beach association, as well as certain individuals in both their individual and representative capacities.[1] The civil

---

[1] Plaintiff was fourteen years old at the time of the accident. He was substituted for his mother as plaintiff in this case when he reached the age of majority.

division granted defendants' motions for summary judgment primarily on the grounds that, given the undisputed facts of this case, Vermont's Recreational Use Statute protected them from liability, and the individual defendants did not owe plaintiff a duty of care in connection with the accident that led to this lawsuit. We conclude that the individual defendants were entitled to summary judgment, but we reverse the trial court's determination that the Recreational Use Statute is applicable in this case. Accordingly, we remand the matter for further proceedings concerning plaintiff's claims against the non-individual defendants.

¶ 2.     Applying the same standard as the trial court in reviewing defendants' motions for summary judgment, we must determine whether material facts are in dispute and, if not, whether the moving party is entitled to judgment as a matter of law. See Nolan v. Fishman, 2019 VT 63, ¶ 11, 211 Vt. 1, 218 A.3d 1034. Issues of statutory interpretation raise questions of law that we review without deference to the trial court. Id. In construing a statute, our paramount goal is to discern the Legislature's intent, first by examining the plain meaning of the statute and, if necessary, "by considering the entire statute, including its subject matter, effects and consequences, as well as the reason and spirit of the law." Athens Sch. Dist. v. Vt. State Bd. of Educ., 2020 VT 52, ¶ 19, ___ Vt. ___, 237 A.3d 671 (quotation omitted).

## I.  Facts and Procedural History

¶ 3.     The material facts are undisputed. At the time of the accident, plaintiff's family owned a home and resided in Pine Bluff Estates, a lakeside residential development adjoining Lake Memphremagog in Newport, Vermont. The development was created by a partnership, defendant Pine Bluff Estates Partnership, which was formed by defendants Douglas Spates, Rosemary Lalime, and William Boyd Davies in the late 1980s for the purpose of developing land. The still-active partnership owns ten or so lots of the approximately seventy-five lots created in the Pine Bluff Estates development.

2

¶ 4.    Defendant Pine Bluff Estates Beach Association is a non-profit corporation that owns the common areas within the development, including the lakeshore beach and the one-lane, unpaved beach access road on which plaintiff was injured.  Spates, Lalime, and Davies do not personally own property or reside in Pine Bluff Estates, but they remain as president, secretary, and treasurer, respectively, of the Association and make up its board of directors.

¶ 5.    Anyone who owns property in the development is automatically a member of the Association, which collects an annual assessment from its members for taxes, insurance, and maintenance of the common areas.  Use of the common areas, including the beach and the access road, is restricted to unit owners and their tenants, guests, invitees, and licensees.  All residents are required to pay the assessment, irrespective of the extent to which they use the common areas.  The Association has the right to suspend or limit any resident's use of the beach and access road for failure to observe the rules and regulations concerning the common areas.  Residents who are prohibited from using any element of the common areas are still required to pay the full assessment.

¶ 6.    At some point before 2006, two posts connected by a chain were installed on the beach access road to keep the general public from accessing the lake and partying on the beach. Apparently, the posts and chain were erected informally by one or more of the unit owners.

¶ 7.    In 2006, the Association created a Beach Committee as part of the process established for the unit owners to take over the Association and the Partnership that created it.  In 2006-2007, there were improvements to the beach access road.  Minutes from a 2007 Association meeting indicate that the Beach Committee was to work out details regarding installing gates or resetting the posts and chain after completion of some construction work.  There was no formal approval of, or payment for, any action in this regard.

¶ 8.    When plaintiff moved into Pine Bluff Estates with his family in 2008, he was aware that there was a chain that could be pulled across the access road and affixed to posts to block

3

traffic. He and his family often went to the beach using the beach road on which the posts and chain were located.

¶ 9. On June 3, 2015, plaintiff rode his motorbike up and down the access road several times. After several trips up and down the road, he saw a vehicle approaching him on the road from the direction of the beach, at which point he drove away, only to return shortly thereafter. On his final trip down, he did not see, until the last moment, that someone had strung the chain across the road and affixed it to the posts. He braked and slid along the ground before striking the chain across his throat, which caused serious injury.

¶ 10. In June 2018, plaintiff filed a negligence action against, among others, the Pine Bluff Estates Partnership, the Meadows Edge at Pine Bluff Estates Association, and the Pine Bluff Estates Beach Association, as well as Spates, Lalime, and Davies, in their individual and representative capacities. Defendants moved for summary judgment, primarily on the grounds that they owed no duty of care to plaintiff and that Vermont's Recreational Use Statute precluded liability for plaintiff's injuries. Spates filed a separate motion for summary judgment, contending that he owed no duty of care to plaintiff.

¶ 11. In an August 2020 decision, following discovery, the trial court granted both motions for summary judgment. The court construed Vermont's Recreational Use Statute to preclude any liability on the part of the corporate defendants, as well as any defendants who owned property in Pine Bluff Estates. The court further concluded that none of the individual defendants, including Spates, owed plaintiff a duty of care in connection with the accident in which he was injured.

¶ 12. On appeal, plaintiff argues that: (1) the Recreational Use Statute does not apply to private, restricted areas of a residential development that are reserved for the exclusive use of residents and their guests; and (2) the trial court erred in granting summary judgment to the individual defendants because the record was sufficient for a jury to find liability.

4

## II.  The Recreational Use Statute

¶ 13.    The Recreational Use Statute, which became law in 1998, was enacted with the express purpose of

> encourag[ing] owners <u>to make their land and water available to the public for no consideration for recreational uses</u> by clearly establishing a rule that an owner shall have no greater duty of care to a person who, without compensation, enters or goes upon the owner's land for a recreational use than the owner would have to a trespasser.

1997, No. 110 (Adj. Sess.), § 1 (emphasis added); 12 V.S.A. § 5791 (emphasis added).  Towards that end, a landowner "shall not be liable for property damage or personal injury sustained by <u>a person</u> who, without consideration, enters or goes upon the owner's land for a recreational use unless the damage or injury is the result of the willful or wanton misconduct of the owner."  12 V.S.A. § 5793(a) (emphasis added).

¶ 14.    Vermont was one of the last states to enact a recreational use statute limiting landowner liability after the Council of State Governments drafted a model act in 1965 "in response to a growing trend among states to limit the common-law liability of owners who made their land available to the public for recreational purposes."  See <u>Martinez v. Ross</u>, 227 A.3d 667, 673 (Md. Ct. Spec. App. 2020) (citing 24 Council of State Governments, Suggested State Legislation, Public Recreation on Private Lands: Limitations on Liability 150 (1965)).  The Council explained in the preamble to the model act that it is unreasonable to expect "private owners [who] are willing to make their land available to members of the general public without charge" to undertake "the risks of liability for injury to . . . strangers from whom the accommodating owner receives no compensation or other favor in return."  24 Council of State Government, <u>supra</u>, pmbl.

¶ 15.    Here, plaintiff argues that, given the undisputed facts in this case, the Recreational Use Statute is inapplicable as a matter of law because he was injured on developed land—the beach access road—which is not open to the public but rather reserved for the exclusive use of the

5

development's residents (and their guests), who pay consideration for its use in the form of an assessment to maintain the development's common areas.[2] Broken down into its component parts, plaintiff's argument is that the statute is inapplicable for any one of the following three reasons: (1) the land upon which he was injured is not "open and undeveloped land" within the meaning of the statutory term "[l]and," 12 V.S.A. § 5792(2)(A)(i); (2) the land is not open to the public, as required by the statute, see id. § 5791 (providing that purpose of statute is to encourage owners to make their land "available to the public for no consideration for recreational us[e]"); and (3) residents pay consideration for use of the land in the form of a fee assessment to maintain the property for the residents' exclusive use, see id. § 5792(1) (defining "Consideration" in part as "a price, fee, or other charge paid to or received by the owner in return for the permission to enter upon or to travel across the owner's land for recreational use").

¶ 16.    We need not consider the first and third components of plaintiff's argument insofar as our resolution of the second component—the question of public use—is dispositive. We conclude that the Recreational Use Statute is inapplicable in this case because the undisputed facts demonstrate that the land upon which plaintiff was injured was not open to members of the general public, as required to trigger the statute's grant of limited liability to landowners.

¶ 17.    As indicated, the Legislature expressly provided that the purpose of the statute is to encourage landowners to make their property "available to the public" for recreational use without consideration. The liability provision of the statute, however, refers to "a person" and does not expressly provide that the land must be open to the public. Compare 12 V.S.A. § 5791, with id. § 5793(a). Focusing on the word "encourage" in the purpose provision, defendants would have us discount that provision and rely primarily, if not exclusively, on the liability provision, which

---

[2]    The parties do not dispute the fact that plaintiff was engaged in a recreational use, as defined by the statute, when he was injured. See 12 V.S.A. § 5792(4).

makes no mention of the public. We conclude that doing so would thwart the expressed legislative intent underlying the statute.

¶ 18. We first note that: (1) the Legislature expressly provided that the Recreational Use Act "shall be liberally construed to accomplish the purpose set forth in Sec. 1 (12 V.S.A. § 5791) to limit an owner's liability," 1997, No. 110 (Adj. Sess.), § 2 (emphasis added); and (2) the purpose provision is not the only provision in the statute indicating that landowners must make their land available to the public to benefit from the statute, see 12 V.S.A. § 5794(c) (stating that posting of land or presence of fences or agricultural or forestry-related structures does not preclude land from being considered open and undeveloped for "purposes of protecting landowners who make land available for recreational use to members of the public for no consideration pursuant to this chapter" (emphasis added)). In short, the purpose provision's suggestion that the statute's limited liability applies only to land open to the public for recreational use is bolstered not only by the Legislature's direction to liberally construe the statute according to that expressed purpose, but also by another provision in the statute indicating that the statute applies only to land open to the public.

¶ 19. Our recent opinion in Nolan v. Fishman, did not deal directly with the issue of whether the Recreational Use Act applies only to land open to the public, but the opinion is nonetheless instructive as to our understanding of the legislative intent underlying the statute. 2019 VT 63. Although we construed the statute broadly in concluding that it applied to limit the liability of the defendants, who owned land where a young child wandering from an adjacent daycare had drowned, we indicated our understanding that the plain language of the statute was designed to protect owners who allowed recreational use by members of the general public. In rejecting the trial court's emphasis on the familial relationship between the daycare owners and defendants, we noted that "the record shows that the land is just as 'open' to the daycare as it is to the general public." Id. ¶ 16.

7

¶ 20.    Since enactment of the model act, many courts have acknowledged a perceived "drafting problem" in that the liability provision did not include the word public, notwithstanding the Act's express purpose to encourage landowners to open their land to the public. Martinez, 227 A.3d at 674-75 (quotation omitted) (noting states' recognition of "the tension between the expressed statutory purpose, which is to encourage owners to open their land to the general public, and the operative provisions, which can be read to grant limited liability against the claims of ordinary invitees and licensees"). Nonetheless, most courts interpreting their recreational use statute have concluded that, given the express purpose of the statute, the operative liability provision's reference to "person"[3] refers to members of the general public, thereby conditioning application of the statute on the land being open to the general public for recreational purposes. Id. at 675-76 (discussing cases); Estate of Gordon-Couture v. Brown, 876 A.2d 196, 201-02 (N.H. 2005) (same)[4]; see also Conant v. Stroup, 51 P.3d 1263, 1267-68 (Or. Ct. App. 2002) (finding persuasive courts' near-uniform determination that recreational use statutes based on model act effectuate their purpose by restricting protection to landowners who allow recreational use of their land by members of general public).

¶ 21.    As the vast majority of courts across the country have concluded, particularly those containing an express purpose provision, recreational use statutes establish a tradeoff to promote recreational use of private lands by the general public: landowners will benefit from limited

---

[3]    Many recreational use statutes refer to "any person" in their liability provisions, in contrast to 12 V.S.A. § 5793(a)'s reference to "a person" in Vermont's Recreational Use statute. See, e.g., Estate of Gordon-Couture v. Brown, 876 A.2d 196, 201 (N.H. 2005) (discussing New Hampshire statute); Conant v. Stroup, 51 P.3d 1263, 1265-66 (Or. Ct. App. 2002) (discussing Oregon statute). This distinction does not impact our analysis on the question of whether the statute requires that land be open to the general public for recreational use.

[4]    In so ruling, the New Hampshire Supreme Court declined to adopt a decision by the First Circuit Court of Appeals holding that the limited liability provided under New Hampshire's recreational use statute was not restricted to land open to the general public. Estate of Gordon-Couture, 876 A.2d at 205 (declining to adopt Collins v. Martella, 17 F.3d 1, 4 (1st Cir. 1994)).

8

liability for injuries resulting from recreational use of their land left open to members of the public for such use. See Martinez, 227 A.3d at 674 (citing many courts that have recognized "quid pro quo" contained in recreational use statutes: "in exchange for opening lands for recreational use by the public, owners receive a special statutory grant of qualified immunity from suit by such recreational users" (quotation omitted)); see also Mozier v. Parsons, 852 F. Supp. 925, 932 (D. Kan. 1994) (noting that "courts in other states in which [the model act] has been adopted have consistently held that a landowner receives the protection of the statute only by permitting free use of the land and facilities by the general public"); Gibson v. Keith, 492 A.2d 241, 244 (Del. 1985) ("[A]n invitation or permission (direct or indirect) extended by a landowner to the public to enter without charge for recreational purposes is a sine qua non for invoking the statute's protective benefits.").[5]

¶ 22.    To hold otherwise, we would have to assume that, in enacting the Recreational Use Statute, the Legislature intended to provide limited (trespasser) liability in a virtually unlimited set of circumstances—guests and friends at a private home social gathering, for example—which would essentially upend the long-established scheme of landowner liability distinguishing the duty landowners owe to invitees and licensees from that owed to trespassers. See Demag v. Better Power Equip., Inc., 2014 VT 78, ¶ 26, 197 Vt. 176, 102 A.3d 1101 (adopting long-established

_____

[5] The cases that defendants cite in support of their position either provide limited or unpersuasive reasoning, or are based on distinguishable statutory language, or both. See, e.g., Stanley v. Tilcon Me., Inc., 541 A.2d 951, 953 (Me. 1988) (summarily concluding that limited-liability provision in Maine's recreational use statute, which has no express purpose provision, "is neither expressly nor implicitly conditioned upon the agreement of the landowner" to open land to general public); Lee v. Lamar Cent. Outdoor, LLC, No. 63048, 2014 WL 1319180, at *2 (Nev. Mar. 31, 2014) (concluding that owner's construction of fence and billboard on his property did not preclude application of recreational use statute, which has no express purpose provision, and citing New York decisions holding that recreational use statute applied even where landowners made efforts to prevent others from using property); Coogan v. D'Angelo, 886 N.Y.S.2d 306, 308 (App. Div. 2009) (citing well-settled law that New York recreational use statute, which has no express purpose provision, applies to landowners who attempt to prevent members of public from using their land).

reasonable-care standard for duty landowners owe to all lawful entrants onto their land but emphasizing that landowners still have no duty to protect trespassers from injuries caused by unsafe or dangerous conditions on their land); see also Martinez, 227 A.3d at 675 (concluding that ignoring purpose provision of recreational use statute and reading liability provision in isolation to make statute available to landowners whose land is not open to public "effectively would nullify the law of premises liability as it pertains to invitees" (quotation omitted)); Snyder v. Olmstead, 634 N.E.2d 756, 761 (Ill. App. Ct. 1994) (applying Recreational Use Act "to a situation where an owner does not open his property to the public, but simply invites a few private persons to a picnic" would lead to absurd results and "eviscerate the common law by immunizing all homeowners from all negligence claims of all guests who enter for" recreational purposes); Bucki v. Hawkins, 914 A.2d 491, 497 (R.I. 2007) ("It would be both absurd and contrary to the Legislature's stated intent to shield every landowner from liability for injuries that guests suffer while engaging in recreational activity on their property."); Perrine v. Kennecott Mining Corp., 911 P.2d 1290, 1293-94 (Utah 1996) (construing Landowner Liability Act to apply to landowner who permitted use of its land by rodeo club's dues-paying members "would be nonsensical and contrary to the Act's stated purpose" of encouraging landowners to make their land available to public).

¶ 23.   We would also have to assume that the Legislature intended to insulate homeowners' and condominium associations from liability for injuries occurring in common areas controlled by the associations, notwithstanding the existence of law suggesting the contrary.  See, e.g., Martinez v. Woodmar IV Condos. Homeowners' Ass'n, 941 P.2d 218, 221 (Ariz. 1997) (en banc) (citing Restatement sections for principle that condominium association, like landlord, has duty to provide reasonable care to protect owners, tenants, and their guests who use common areas under association's control); Sevigny v. Dibble Hollow Condo. Ass'n, 819 A.2d 844, 854-55 (Conn. App. Ct. 2003) (concluding, along with courts of other states, that condominium association, similar to landlord-duty relationship, has duty of reasonable care toward unit owners

10

and their guests with respect to their use of common areas controlled by association); see also Trailside Townhome Ass'n v. Acierno, 880 P.2d 1197, 1202-03 (Colo. 1994) (en banc) (concluding that operative documents of townhome association, as well as general negligence principles, establish duty giving rise to tort obligations concerning use of common areas). There is no indication that the Legislature intended such results.[6]

¶ 24. Defendants argue, however, that it would be absurd to apply Vermont's Recreational Use statute only when landowners open their lands to every single member of the public without restrictions. We make no such holding here. We need not engage in line-drawing in this case to establish when land is sufficiently open to the public to warrant application of the statute. Cf. Snyder, 634 N.E.2d at 761 (stressing "that in order to seek protection under the [Recreational Use] Act, a landowner need not allow all persons to use the property at all times" (quotation omitted)); Perrine, 911 P.2d at 1293 (stating that "landowners must make their land available to all members of the general public" but "may impose reasonable restrictions on the type of recreational activities allowed on their land"); Herring v. Hauck, 165 S.E.2d 198, 199 (Ga. Ct. App. 1968) (construing Recreational Use Statute to "permit the free use of [owner's] facilities or land by the public generally or by a particular class of the public"); Martinez, 227 A.3d at 680 (noting "qualitative difference" between making property open to all as opposed to invited social guests); Young v. Wood, 254 S.W.3d 871, 874 (Mo. 2008) (en banc) (applying statute to landowner who gave hunters permission to use land and noting that Missouri's Recreational Use Act does not "require that land be opened to the entire general public"); Holden v. Schwer, 495 N.W.2d 269, 274 (Neb. 1993) (holding "that the Recreation Liability Act does not require a

---

[6] Because the land here was undisputedly closed to the public, we need not and do not decide whether the Recreational Use Statute reduces the standard of care a landowner owes to invited guests, or a homeowners' association owes to members and their invited guests, with respect to land that is also held open to the members of the public for recreational uses.

landowner to fully dedicate . . . property to the public before the landowner comes under the protection of the act"). We leave any such line-drawing for future cases.

¶ 25. Here, notwithstanding defendants' protestations to the contrary, the undisputed record plainly demonstrates that the subject property was not open to the public in any manner, shape, or form—but rather was open only for the exclusive use of the development's residents and their guests. This fact is established in the record through admission of the development's operative documents, as well as witness testimony. Indeed, the chain upon which plaintiff was injured was erected specifically to deter members of the public from using the Association's beach. The exclusive use of the beach access road by the development's residents and their guests cannot be considered use by the public under any reasonable interpretation of the word or the statute. See Public, Black's Law Dictionary (11th ed. 2019) (defining "public," in part, as "[o]f, relating to, or involving an entire community, state, or country," and "[o]pen or available for all to use, share, or enjoy"). In short, defendants did not satisfy their end of the inherent bargain contained in the Recreational Use Statute limiting landowner liability for injuries resulting from recreational uses on lands open to the public for such uses. Accordingly, we conclude that the Recreational Use Statute is inapplicable to defendants in this case, and we reverse the trial court's summary-judgment ruling on this point.

### III. The Individual Defendants

¶ 26. As for the individual defendants, the trial court granted Spates's separate motion for summary judgment, ruling that: (1) in his capacity as a director and officer of the Beach Association,[7] a non-profit corporation, Spates could be liable only for actions that constituted gross

_____

[7] The trial court noted that, in response to the motion for summary judgment, plaintiff claimed liability against Spates only in his capacity as director of the Beach Association, and not in his capacity as a partner in the Partnership that created Pine Bluff Estates. Plaintiff does not dispute this fact. Neither does plaintiff challenge the trial court's application of § 5781(1); rather, he contends that the court erred in finding no evidence in the record to support a finding of gross

12

negligence, see 12 V.S.A. § 5781(1) (providing that persons who serve "without compensation as a director, officer, or trustee of a nonprofit organization . . . shall not be held personally liable for damages resulting from . . . any [good faith] act or omission within the scope of the person's official functions or duties . . . unless it constitutes gross negligence or an intentional tort"); and (2) as a matter of law, plaintiff failed to proffer facts sufficient to demonstrate that Spates was either grossly negligent or engaged in conduct that caused plaintiff's injuries.

¶ 27.    The trial court also ruled with respect to all of the individual defendants—Spates, Lalime, and Davies—that: (1) none of them, in their individual capacity or as directors of the Beach Association or partners in the Partnership owed a legal duty to plaintiff under the Beach Association's by-laws; and (2) no facts showed that they were responsible for, or approved, the design, installation, cost, or use of the posts and chain.

¶ 28.    On appeal, in challenging the trial court's rulings, plaintiff focuses solely on the individual defendants' role as directors of the Beach Association.  Hence, the legal issue on appeal is the same for all three of the individual defendants.  Further, in the absence of any challenge to the trial court's application of § 5781(1), the only issue is whether the trial court erred in concluding that, based on the record before it, plaintiff failed to proffer sufficient facts to support a claim of gross negligence.  We conclude, as a matter of law, that the record does not support a claim of gross negligence against the individual defendants.[8]

---

negligence.  Plaintiff has not raised, and we do not consider, how, if at all, Spates's role as a partner in the still-active Partnership could impact the application of § 5781(1).

[8] Defendants argue that plaintiff failed to preserve a claim of gross negligence.  We address the merits of plaintiff's argument that the record supports a claim of gross negligence, insofar as the trial court considered whether plaintiff had made a sufficient showing to support such a claim and ruled that he had not.  See Vt. Built, Inc. v. Krolick, 2008 VT 131, ¶ 10, 185 Vt. 139, 969 A.2d 80 (stating that purpose of "preservation rule is to ensure that the original forum is given an opportunity to rule on an issue prior to our review" and that rule "is satisfied when the trial court had a fair opportunity to consider, evaluate and rule upon the question raised on appeal" (quotations omitted)).

¶ 29. "Gross negligence is negligence that is more than an error of judgment; it is the failure to exercise even a slight degree of care, owed to another." Sutton v. Vt. Reg'l Ctr., 2019 VT 71A, ¶ 56, ___ Vt. ___, 238 A.3d 608 (quotation omitted). "In other words, to establish gross negligence, a plaintiff must show a defendant heedlessly and palpably violated a legal duty owed to plaintiff." Id. (quotation omitted). "Whether a defendant's conduct rose to the level of gross negligence is ordinarily a question of fact for the jury, and an allegation of gross negligence may be dismissed by the court only if reasonable minds cannot differ." Id. (alteration omitted) (quotation omitted).

¶ 30. In opposing defendants' motions for summary judgment, plaintiff neither asserted any material undisputed facts nor disputed any material facts alleged by either defendants or Spates relative to the individual defendants' role as directors of the Beach Association. See V.R.C.P. 56(c)(1)(A) (providing that party disputing material facts alleged in motion for summary judgment must support assertion with "a separate and concise statement of undisputed material facts or a separate and concise statement of disputed facts"); see also Webb v. Leclair, 2007 VT 65, ¶ 4, 182 Vt. 559, 933 A.2d 177 (mem.) ("[W]e have consistently enforced the rule that a plaintiff's failure to controvert facts in a counter statement requires that the moving party's undisputed facts be taken as true.").

¶ 31. Spates asserted in his statement of undisputed facts, in part, that: (1) he, Lalime, and Davies do not own property in Pine Bluff Estates but served as president, secretary, and treasurer, respectively, of the Beach Association and on the Association's board of directors; (2) although Spates, as president, ran the Association meetings, it was the Association that made decisions; (3) at some point, the Beach Association members requested that some sort of barrier be erected along the beach access road to prevent unauthorized traffic on the road and partying on the beach; (4) a Beach Committee was formed in 2006; (5) Spates was not a member of the Beach Committee and relied upon Association members to exercise reasonable care when using the

14

common areas; and (6) Spates was not involved in the design or installation of the barrier erected on the access road and was unaware of any unreasonably dangerous conditions created by the barrier that was eventually erected.

¶ 32. Defendants asserted in their statement of undisputed material facts, in part, that: (1) at some point, posts and a chain were installed on the beach access road; (2) Beach Association members took responsibility to put the chain up; (3) one of the Association members, the same person who plaintiff saw driving his vehicle toward him on the day he was injured, assumed the unofficial volunteer position as beach keeper; (4) a Beach Committee was formed in 2006 to coordinate improvements to the beach and beach access road; (5) because creation of the Beach Committee was part of a planned transition of authority to the Pine Bluff Estates property owners, Davies, Lalime, and Spates were not members of the Beach Committee; and (6) at the 2007 annual Association meeting, members discussed installing gates or putting up a chain again once a gazebo was completed.

¶ 33. On appeal, plaintiff cites bylaws of the Meadow's Edge at Pine Bluff Estates Association that make the board of directors responsible for approving any maintenance or repair of the common areas.[9] Essentially, plaintiff argues that, given the individual defendants' effective concession that they took no responsibility to ensure the erection of safe barriers on the beach access road, notwithstanding their duty to do so under the development's bylaws, a jury could find that, through their omissions, they were grossly negligent.

---

[9] In opposing summary judgment in the trial court, plaintiff did not cite or rely on the Meadow's Edge at Pine Bluff Estates Association bylaws; rather, he cited only the Beach Association bylaws providing that the board of directors assumed all duties and powers necessary for the administration of the affairs of the Beach Association and could do any acts not directed to be exercised by unit owners. This is the argument that the trial court considered and rejected, concluding that the bylaws providing general authority for governance of the corporation did not impose a duty on the individual defendants that would support a negligence action. Because the trial court had no opportunity to consider it, plaintiff failed to preserve for review by this Court his argument that the Meadow's Edge bylaws created a legal duty that the individual defendants owed to him in connection with this case. See Krolick, 2008 VT 131, ¶ 10.

¶ 34.    We conclude that, as a matter of law, given the undisputed facts in this case, plaintiff cannot demonstrate that any acts or omissions by the individual defendants "heedlessly and palpably violated a legal duty owed to plaintiff."  Sutton, 2019 VT 71A, ¶ 56 (quotation omitted).  The undisputed record before the trial court indicated that the individual defendants were neither property owners nor Association members at Pine Bluff Estates and took no part in the design or installation of the barrier across the access road, which had been delegated to a Beach Committee made up of Association members.  Notwithstanding plaintiff's argument on appeal that the record is unclear as to whether Association bylaws permitted any such delegation, the individual defendants' lack of involvement in overseeing the design, erection, or maintenance of the barrier on the beach access road—though potentially negligent—did not rise to the level of gross negligence, given the undisputed facts of this case.

The civil division's August 24, 2020 summary judgment decision is affirmed as to the individual defendants.  The decision is reversed as to the non-individual defendants, and the matter is remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____

Associate Justice