Filed 02/05/24

VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 22-CV-04457

---

Edward Spaulding et al v. Aron Shea et al

---

## Opinion and Order on the Sheas' Motion for Partial Summary Judgment

This case arises out of the failure of the spring-fed "water system" that delivers water to the residential property where Plaintiffs Edward Spaulding and Charlene Spaulding live and where Mr. Spaulding and Plaintiff Courtney Spaulding reside and carry on a small farming operation. The spring is located on the property of a third party. A service line extends from the spring to a cistern on the property of Defendants Aron Shea, Corey Shea, and Shea Property Services, LLC.[1] A service line then extends from the cistern to the Spauldings' contiguous property.[2] Plaintiffs possess an easement, of some scope, concerning use of the system. All defendants other than the Sheas have been dismissed from the case at this point. There is no dispute that the Spauldings have the legal right to use and maintain the water system as it crosses the Sheas' property. Two controversies between the Spauldings and the Sheas remain in this case: (1) whether the Sheas or their agents in a grossly negligent manner severely damaged the

---

[1] There is no need in this decision to distinguish among the Spaulding Plaintiffs or among the Shea Defendants. For ease of reference, the Court will simply refer to the Spauldings and the Sheas.

[2] During the litigation, the Spauldings have replaced the cistern and the service line running from it to their property. The Court's references in this decision to the cistern and water line are to those in place when the controversy first arose unless specified otherwise.

system, causing the Spauldings to lose virtually all water pressure, and (2) whether the Spauldings installed an overflow ditch from a newly installed cistern that falls outside the scope of the easement.

The Sheas have filed a motion for partial summary judgment addressing the Spauldings' claim of gross negligence. The dispute as to the scope of the easement is not before the Court at this time. The Court determines as follows.

I.     Summary Judgment Standard

Summary judgment procedure is "an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c)(1), shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Vt. R. Civ. P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994) (summary judgment will be granted if, after adequate time for discovery, a party fails to make a showing sufficient to establish an essential element of the case on which the party will bear the burden of proof at trial). The Court derives the undisputed facts from the parties' statements of fact and the supporting documents. *Boulton v. CLD Consulting Engineers, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413, 427. A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts, affidavits, or other evidence to establish such a dispute. *Murray v. White*, 155 Vt. 621,

628 (1991). Speculation is insufficient. *Palmer v. Furlan*, 2019 VT 42, ¶ 10, 210 Vt. 375, 380.

## II.    The Spauldings' Claim Against the Sheas

In the complaint, the Spauldings assert two legal claims against the Sheas as to damage to the water system: that the Sheas intentionally damaged it (Count 7) and that they or their agents acted with gross negligence and thereby damaged it (Count 8). The complaint includes no allegations describing what the Sheas may have done that damaged the water system or even what the damage was. It only alleges the result: no water. Plaintiffs eventually withdrew Count 7. Their sole remaining claim against the Sheas is for gross negligence, and they seek both compensatory and punitive damages. It is apparent in the summary judgment briefing that the Spauldings claim that an agent of the Sheas mowed the Shea property using a Bobcat Model T870 skid steer, drove over the buried water service line, and that caused it to break in half in one specific location.[3]

"Gross negligence is negligence that is more than an error of judgment; it is the failure to exercise even a slight degree of care, owed to another. In other words, to establish gross negligence, a plaintiff must show a defendant heedlessly and palpably violated a legal duty owed to plaintiff." *Crogan v. Pine Bluff Ests.*, 2021 VT 42, ¶ 29, 215 Vt. 50, 63 (citations omitted). Gross negligence connotes "an extreme degree of risk, which is a function of both the magnitude and the probability of the potential injury and which is not satisfied unless the defendant's conduct creates the likelihood of serious injury to the plaintiff." 3 Stuart M. Speiser *et al., American Law of Torts* § 10:16; *see also*

---

[3] Why doing so may have amounted to gross negligence—or negligence at all—is not clear in the summary judgment briefing.

*Restatement (Third) of Torts: Phys. & Emot. Harm* § 2 cmt. a ("Taken at face value, this term [gross negligence] simply means negligence that is especially bad."); Dan B. Dobbs *et al., The Law of Torts* § 140 (2d ed.) (Gross negligence refers to "conduct that is a more serious departure from safety norms than conduct amounting to ordinary negligence, either because the risk itself is more substantial or because the risky conduct produces less compensating benefits."). "Whether a defendant's conduct rose to the level of gross negligence is ordinarily a question of fact for the jury, and an allegation of gross negligence may be dismissed by the court only if reasonable minds cannot differ." *Crogan,* 2021 VT 42, ¶ 29, 215 Vt. at 63 (citation omitted).

As noted above, the Sheas' motion focuses on causation only; it does not explore the other legal elements of the Spauldings' grossly negligent mowing claim. The motion argues that causation in this case is not obvious. As a result, it requires expert support, and the Spauldings' expert's testimony is impermissibly speculative as to causation. The motion concludes that the Spauldings lack sufficient evidence to support a finding by the jury to the effect that the Sheas' agent damaged their water line. The Spauldings disagree with those contentions.

III.     Analysis

The record reflects that the subject water line was buried in rocky soil approximately 3 feet deep.[4] Both parties' professional engineer experts agree that driving the Bobcat skid steer over the buried line typically would not have been sufficient

---

[4] There is some testimony to the effect that the depth ranged in places across its length from 30 to 36 inches. There is no testimony as to how deep the line was where it broke and no indication in the expert testimony that a maximum 6-inch differential would have mattered as to the competing expert opinions.

to cause it to break. That it is alleged to have done so in this case is not so obviously true as to avoid the need for expert testimony on that issue, and neither party so argues. *See Houghton v. Leinwohl*, 135 Vt. 380, 384 (1977) (explaining that expert testimony is necessary where a "lay person of average intelligence, from his knowledge and experience" would not be competent to "reach the necessary conclusions"). Accordingly, Plaintiffs' claim must be supported by sufficient expert analysis and opinion.

The Sheas' expert, Mr. John Pitrowiski, P.E., opines as follows. The loss of water pressure at the Spaulding residence likely was caused by damage to the water line at a particular joint, where it completely broke in two. He explains that the skid steer's weight was distributed such that it only exerted the same downward pressure at the surface as would a "small 1500-pound ride on lawn mower with 4 wheels," which would be insufficient to harm the buried line. He saw no evidence that the skid steer caused any ruts in the surface, and he does not believe that the skid steer or any other equipment on the surface would have caused the water line to break. He believes that it is more likely "that the initial [when the line was installed many years] backfill without proper bedding material caused some of the damage identified by Spaulding (the minor indentations of the water line), and the rock movement with frost action over time, and the 'water hammer' caused the pipe to squash and to come apart in the one" location where it broke in half. He explains that "[w]ater hammer means the variations in pressure as the pipe was used, worked the joint over the years and it eventually came apart."

The Spauldings' expert, Mr. George N. McCain, Jr., P.E., opines as follows. The water line was installed without bedding material. The Spauldings reported losing water

pressure a couple days after the skid steer mowing on the Shea property. The "breakage" described above is "consistent" with how long the cistern took to "de-water" and is "consistent with what can happen due to a large surface loading above the line." Mr. McCain dismisses other potential causes for the break and then concludes as follows:

> Typically, a Bobcat such as the one being operated above the water service line would not exert significant enough pressure at the depth of the buried pipe to cause the forces required to shear the connector. However, the Bobcat was outfitted with a mowing attachment and being operated on slopes exceeding 30% in the location where the break appears to have occurred. Operation of this equipment on a slope would have unevenly distributed pressures from the Bobcat to the treads, and if there were any sharp turns or other unrecommended use of the machine it could have caused point loads well in excess of the standard track pressures when operating on level ground.

.  .  .

> While it would be unlikely for a tracked Bobcat to have caused the break in the water service line, given the sequence of events as reported by the Spauldings, the lack of another plausible cause of the breakage, and the information available to me at this time, my best professional estimate is that there must have been some unique site characteristic such as a large rock on the line combined with unconventional operation of the equipment during the site work that caused an excessive loading above the water service line and sheared the pipe connector.

Affidavit of George N. McCain, Jr., P.E., ¶¶ 10, 13 (filed May 17, 2023). Thus, Mr. McCain concludes that (1) *if* there were some unique site characteristic at the location, and (2) *if* there were some unconventional operation of the equipment, then (3) the combination *may* have produced sufficient loading above the line to shear the pipe connector.

Mr. McCain's conclusion is inherently speculative. He does not testify that there was, in fact, a unique site characteristic present where the break occurred. He does not testify that any specific unconventional equipment operation occurred. And he does not

assess any known site characteristic and unconventional operation to show that the combination was likely to have resulted in sufficient loading to damage the line. Nor is there other evidence in the record that would support findings as to any of these matters.

To the contrary, Mr. Jeremy Allard was the only person who operated the skid steer. He makes clear in his affidavit that he has many years of relevant experience, no unconventional operation of the skid steer occurred, and no one else operated the skid steer.

Notwithstanding the temporal proximity, as reported by the Spauldings, of the mowing to the lack of water pressure they experienced, the record lacks sufficient and reliable evidence to support a finding by the jury that Mr. Allard's operation of the skid steer caused the break in the water line that resulted in the loss of pressure at the Spauldings' residence. Mr. McCain's professional opinion is as good as the record gets on that point, but his testimony is conjectural and would leave the jury only to speculate as to causation. *See Palmer v. Furlan*, 2019 VT 42, ¶¶ 9–10, 210 Vt. 375, 379–80 (speculation insufficient on summary judgment); *Trotier v. Bassett*, 174 Vt. 520, 523 (2002) ("An [expert] opinion cannot be based upon speculation."); *Campbell v. Heinrich Savelberg, Inc.*, 139 Vt. 31, 34 (1980) ("legal standard of reasonable probability required of expert opinions"); *see also Colon v. Abbott Labs.*, 397 F. Supp. 2d 405, 413–14 (S.D.N.Y. 2005) (granting summary judgment where the expert provided speculative opinions on causation).

The Sheas are entitled to summary judgment on the Spauldings' gross negligence claim.

<u>Conclusion</u>

For the foregoing reasons, the Sheas' motion for partial summary judgment is granted.

Electronically signed on Friday, February 2, 2024, per V.R.E.F. 9(d).


_____
Timothy B. Tomasi
Superior Court Judge

22-CV-04457 Edward Spaulding et al v. Aron Shea et al